Willis DAVIDSON, Appellant,

v.

Arthur BOGGS, Appellee.

Nos. 90–CA–002409–MR,
90–CA–002523–MR.

Court of Appeals of Kentucky.

March 19, 1993.

Discretionary Review Denied by Supreme
Court Sept. 22, 1993.

Thomas J. Roberts, Stumbo, Bowling & Barber, P.S.C., Middlesboro, for appellant.

Johnnie L. Turner, Marye V. Campbell, James M. Kennedy, Forester, Buttermore, Turner & Lawson, P.S.C., Harlan, for appellee.

Before JOHNSON, SCHRODER and STUMBO, JJ.

JOHNSON, Judge.

This case involves two appeals between the same parties that have been consolidated. In 90–CA–002409 the appellee/plaintiff-below, Arthur Boggs (hereinafter "Boggs") sued the appellant/defendant-below, Willis Davidson (hereinafter "Davidson") in a tort action for intentional assault. In 90–CA–002523 Boggs sued Davidson and several other individuals in an action to quiet title over a boundary line dispute.[1] Boggs claimed damages from Davidson for trespass on his property and harm caused by Davidson excavating part of his property. Davidson claimed the land as his own and filed a counterclaim seeking similar damages against Boggs.

The boundary dispute between Boggs and Davidson increased in intensity. Both Boggs and his attorney claimed that Davidson had harassed them and threatened them with physical harm. Davidson claimed Boggs vandalized two of his vehicles causing several thousands of dollars in damage. The dispute escalated and on January 12, 1988, Davidson shot Boggs. On January 26, 1988, Boggs filed a civil action against Davidson for intentional assault. Both men were indicted by the Harlan County Grand Jury on February 10, 1988. Both men were tried and convicted in the Harlan Circuit Court. Davidson was found guilty of Assault in the Second Degree, KRS 508.020, and was sentenced to five-years' imprisonment. Boggs was found guilty of Wanton Endangerment in the Second Degree, KRS 508.070, and was sentenced to one-year imprisonment. Boggs was granted shock probation after thirty days.

The boundary dispute action proceeded to trial. Both parties were represented by counsel. On October 9, 1989, Judge Clarence A. Cornelius entered Findings of Fact, Conclusions of Law, and Judgment fixing the boundary line of the disputed property. The issue of damages was reserved for future consideration. Davidson appealed, but this Court dismissed his appeal as premature. (Order entered November 28, 1989, 89–CA–2144.)

In January 1990, Davidson was incarcerated in the Kentucky State Penitentiary.

---

1. The individuals were co-owners of the property with Boggs. Boggs requested the Court to order a sale of the property with the proceeds to be divided among the owners. This aspect of the suit is not at issue in this appeal.

On April 18, 1990, counsel for Davidson, Mr. Jack Stephenson, filed a Motion to Continue the tort action. The motion stated that a continuance was needed because the enraged emotional state of Davidson made it impossible for him to assist counsel in the preparation of his defense. On April 19, 1990, the Court issued an Order which refers both to a Motion to Continue and Counsel for the Defendant's Motion to be Relieved as Counsel, although the latter motion does not appear in the record. The case was continued to May 4, 1990, to assign a trial date, and Stephenson was relieved as counsel in both the tort and boundary dispute actions.

Davidson engaged the services of Mr. Otis Doan to represent him at a May 4, 1990, hearing in order to select a trial date for the tort action. The Court scheduled the case for trial on September 11, 1990, noting that this gave Davidson over 100 days to obtain counsel. The Order contained provisions automatically rescheduling the trial if the case was not tried on September 11. If not tried on September 11, the trial was to be rescheduled for November 6, 1990. If not tried on November 6, 1990, it would be rescheduled for February 19, 1991, and then, if necessary, for April 16, 1991. The Court issued an Order on August 29, 1990, and an Amended Order on September 4, 1990, which would have allowed Davidson to return to Harlan County to prepare for and attend the September 11 trial. The Orders required Davidson to pay the cost of his transportation ($161.80) to the Harlan County Sheriff's Department before being brought to Harlan.

On September 11, 1990, the tort action was called for a jury trial. Davidson, still incarcerated, was not present nor represented by counsel. However, rather than rescheduling the trial to the first automatic reschedule date, the court proceeded with the trial. On September 12, 1990, judgment was entered against Davidson in the amount of $113,757.50. The issue of damages in the trespass action was considered by the Court on September 12, 1990, at which time Boggs was awarded $3,000.

Davidson was not present nor represented by counsel at the September 12 proceedings either.

In both the boundary-dispute action and the tort action, Davidson filed, pro se, a Motion to Vacate Judgment, or in the Alternative, for a New Trial pursuant to CR 59.01. Subsection (a) of CR 59.01 provides that a party may be granted a new trial due to "[i]rregularity in the proceedings of the court, jury or prevailing party, or an order of the court, or abuse of discretion by which the party was prevented from having a fair trial."

■ Specifically, Davidson argued that the failure of the court to appoint a practicing attorney as guardian ad litem pursuant to CR 17.04 prevented him from having a fair trial. CR 17.04 states:

Actions involving adult prisoners confined either within or without the state may be brought or defended by the prisoner. *If for any reason the prisoner fails or is unable to defend an action, the court shall appoint a practicing attorney as guardian ad litem,* and no judgment shall be rendered against the prisoner until the guardian ad litem shall have made defense [sic] or filed a report stating that after careful examination of the case he is unable to make defense [sic]. (Emphasis added.)

■ The language of CR 17.04 is quite clear as to the proper course of action available to the court when an imprisoned defendant fails or is unable to defend an action brought against him. In all such cases the court is required to appoint a practicing attorney as guardian ad litem and may not proceed with the trial until the required duties are performed by the guardian ad litem.

Boggs argues that Davidson's absence and failure to defend was voluntary and that a new trial would allow him to benefit from his delay or neglect in obtaining counsel. Boggs makes much of the fact that Davidson possessed approximately $33,000 in a Harlan bank and could therefore have easily obtained counsel had he chosen to do so. The trial court apparently agreed and

proceeded with the trial of the tort claim noting:

> ... [C]onsidering the defendant's desire not to be present, and considering it unjust and unfair to the plaintiff for his case to be delayed again by the defendant of his self chosen unavailability and that justice would be best served by the Court to allow the plaintiff to go forward....

However, the application of CR 17.04 is not discretionary with the trial court. The rule does not distinguish between voluntary and involuntary absences nor does it allow consideration of whether the prisoner possessed sufficient funds to obtain counsel of his own choosing. Rather, the express terms of CR 17.04 require the court to appoint a guardian ad litem if the prisoner fails to defend for any reason. The failure of the trial court to comply with the requirements of CR 17.04 is a sufficient basis to grant a new trial under CR 59.-01(a). In fact, the appointment of a guardian ad litem under CR 17.04 was designed to prevent the very type of proceeding which took place in the circuit court.

Boggs' arguments regarding due process and waiver are not persuasive. As it was stated in *Morgan County v. Governor of Kentucky*, 288 KY. 532, 156 S.W.2d 498 (1941): "Notice and opportunity to be heard and defend are the essentials of due process." *Id.* at 535, 156 S.W.2d 498 (citing 12 Am.Jur. *Constitutional Law* § 573). The opportunity to examine and cross-examine witnesses, to introduce and refute evidence, is central to the right of due process. *Utility Regulatory Com'n v. Ky. Water Service Co.*, Ky.App., 642 S.W.2d 591 (1982); 16A Am.Jur.2d *Constitutional Law* § 848 (1979).

Although Boggs is correct in stating that the right to a hearing may be waived, such waiver must be made voluntarily, intelligently and knowingly, with awareness of the legal consequences. 16A Am.Jur.2d *Constitutional Law* § 846 (1979). Such a conclusion is not possible in this case. In fact, the appointment of a guardian ad litem under CR 17.04 is intend-

ed, in part, to prevent the failure of a prisoner to obtain counsel as being deemed a waiver of his right to due process.

Boggs insists that CR 17.04 merely allows prisoners to defend an action if they choose to do so. Boggs claims that Davidson was able to defend the action but chose not to do so. In particular, Boggs notes that Davidson possessed sufficient funds to hire counsel and was given four months to do so yet failed to obtain counsel by the September 11 trial date.

However, Boggs' interpretation of the rule is deficient. The possibility that the prisoner *could* have presented a defense does not eliminate the requirement under CR 17.04 that a guardian ad litem be appointed when in fact the prisoner *fails* to defend the action. Consequently, Boggs' argument that due process requires only an opportunity for meaningful access to the courts is misplaced.

Alternatively, Boggs claims that any error created by the failure to comply with CR 17.04 was harmless since Davidson has not demonstrated that he was prejudiced by the error. Again, Boggs' argument is not compelling. A judgment in excess of $113,757.50 was entered against Davidson in a proceeding in which he was neither present nor represented by counsel. Such a procedure cannot be deemed harmless error—it was the type of error designed to be prevented by CR 17.04.

The orders denying appellant's Motion to Vacate Judgment, or in the Alternative, a New Trial are REVERSED; and this matter is REMANDED for proceedings consistent with this Opinion. Having determined that a new trial is warranted, the Court need not address whether the jury award of $113,757.50 is excessive. Furthermore, as Davidson was represented by counsel in the boundary-dispute action for all but the damages portion of that action, the determination of the boundary made by the trial court should remain intact. Under CR 59.01, a new trial may be granted as to all or part of the issues.

Accordingly, the new trial in the boundary-dispute action should be limited to a determination of damages.

All concur.