Martin GOLDSMITH, Appellant,

v.

FIFTH THIRD BANK, Appellee.

No. 2008–CA–001414–MR.

Court of Appeals of Kentucky.

Oct. 30, 2009.

Kevin M. Adams, Louisville, KY, for appellant.

M. Thurman Senn, Louisville, KY, for appellee.

Before ACREE, STUMBO, and WINE, Judges.

## OPINION

WINE, Judge.

Appellant, Martin Goldsmith ("Goldsmith"), appeals from an entry of summary judgment in favor of the appellee, Fifth Third Mortgage Company ("Fifth Third")

concerning four properties he owned which were sold at foreclosure sale and purchased by Fifth Third. On appeal, he argues that the foreclosure sales were invalid as he was incarcerated at the time of the proceedings and a *guardian ad litem* was not properly appointed pursuant to Kentucky Rules of Civil Procedure ("CR") 17.04. He also argues that Fifth Third lacked standing to submit its motion for summary judgment because it no longer had liens on the subject properties at the time the motion was filed. We disagree.

### Relevant Facts and Procedural History

This action originally arose as a foreclosure action on four investment properties owned by Goldsmith which were secured by commercial mortgages through Fifth Third Mortgage Company. The four properties had the following addresses: 4713 Walnut Grove, Louisville, KY ("Walnut Grove"), 3022 Betty Lane, Louisville, KY ("Betty Lane"), 3700 Blue Creek Road, Louisville, KY ("Blue Creek"), and 5004 Wabash Place, Louisville, KY ("Wabash Place"). Goldsmith rented the properties out to third parties.

On December 3, 2003, Fifth Third filed suit to foreclose on the Walnut Grove mortgage based upon Goldsmith's default on the loan. A *lis pendens* was filed on the property in accordance with Kentucky Revised Statute ("KRS") 382.440. At some point thereafter, Goldsmith defaulted on the other three mortgages, and Fifth Third was granted leave to file an amended complaint to include these properties. On February 4, 2004, Fifth Third filed its Amended Complaint naming the Betty Lane, Blue Creek, and Wabash Place properties. An amended *lis pendens* was filed to include these three properties.

The following week, on February 11, 2004, Goldsmith filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Kentucky. Goldsmith then filed a *pro se* answer in the foreclosure action on March 23, 2004, containing a general denial of the issues in the complaint.

On May 11, 2004, the Bankruptcy Court terminated the automatic stay with respect to the above four properties, thus allowing Fifth Third to proceed with the foreclosure action. On September 13, 2004, Fifth Third filed a "Motion for *In Rem* Summary Judgment and Order of Sale." Goldsmith was then incarcerated on November 9, 2004. Thereafter, on November 19, 2004, Darryl and Tina Roderer ("the Roderers"), the tenants of the Betty Lane property, moved to intervene in the action. After intervening in the suit by filing a "Motion to Enter Appearance and Notice of Interest," the Roderers filed a cross-claim against Goldsmith. The Roderers also submitted a motion for the appointment of a *guardian ad litem* for Goldsmith.[1] Goldsmith filed *pro se* answers to the motion and the cross-claim while incarcerated. In each of the answers, Goldsmith stated "I *demand* that the Court *not* appoint a guardian for this matter." (Emphasis in original). Goldsmith also conceded that he was in default on the mortgages.

After the Commissioner's hearing was scheduled, Goldsmith mailed a handwritten statement to the Jefferson County Master Commissioner's Office on February 11, 2005. In that letter, he indicated his desire to be present at the Commissioner's hearing. He requested that the hearing be held at a meeting room in the Jefferson

---

**1.** Goldsmith was incarcerated in the Louisville Metro Corrections Department while serving time for a misdemeanor.

County Jail, or in the alternative, that the hearing be rescheduled until after February 21, 2005, when he expected to be released from incarceration. Thereafter, the Master Commissioner rescheduled the hearing to March 1, 2005. Goldsmith then drafted another letter to the Master Commissioner informing that his release date was delayed until March 15, 2005, and requesting that the hearing date be postponed until that time. Although the letter was postmarked February 25, 2005, the Master Commissioner and Fifth Third both contend that they had not received the letter at the time of the March 1, 2005 hearing.

Thus, on March 1, 2005, the Master Commissioner conducted a hearing on Fifth Third's motion for *in rem* summary judgment and order of sale. Counsel for the Roderers was not present, nor was Mr. Goldsmith. The hearing proceeded in their absence and the Master Commissioner issued a report on March 8, 2005.[2] The report recommended that judgment be entered in favor of Fifth Third. Based upon this recommendation, the court entered an *in rem* judgment and order of sale on April 4, 2005, directing the Master Commissioner to conduct a sale of the properties. The properties went to foreclosure sale on June 7, 2005. Fifth Third purchased all four properties at judicial sale for $216,667.00. The sale was confirmed by an order of the court entered on June 23, 2005.

Fifth Third obtained Commissioner's Deeds for the four properties on June 30, 2005. Between the months of September 2005 and December 2005, Fifth Third sold each of the properties to third parties. Fifth Third then released their liens and mortgages on the properties on December 15, 2005.

On July 5, 2006, Goldsmith filed a CR 60.02 motion to set aside the April 4, 2005 *in rem* judgment and order of sale on the grounds that he was incarcerated at the time of judgment and he was entitled to have a *guardian ad litem* appointed under CR 17.04. Fifth Third entered an objection to this motion; however, the trial court granted Goldsmith's motion. On September 8, 2006, the trial court entered an order vacating the *in rem* judgments, holding that CR 17.04 is not discretionary, but mandatory, and requires that a *guardian ad litem* be appointed for a prisoner prior to entry of a judgment whenever such prisoner is unable to or ceases to defend.[3] Thereafter, Fifth Third filed a motion to reconsider and motion to re-enter summary judgment, *nunc pro tunc*, on September 18, 2006. The trial court denied Fifth Third's motions on October 11, 2006. Fifth Third then filed a motion to appoint a *guardian ad litem* on October 26, 2006, which was denied by the court as being unnecessary.[4]

At some point thereafter, Goldsmith learned that his counsel had left the firm

**2.** At the hearing, Fifth Third's counsel opined that he had searched the jail records and found no record that Goldsmith was incarcerated. Of course, this information later proved to be untrue, as Goldsmith was incarcerated at the time. This statement appears to be the basis of Goldsmith's fraud allegation under CR 60.02(d).

**3.** The Kentucky Supreme Court case of *Asset Acceptance v. Moberly,* 241 S.W.3d 329 (Ky. 2007) had not yet been decided at the time of

the trial court's order granting Goldsmith CR 60.02 relief. As such, Fifth Third would not have been able to directly appeal from the order as Kentucky had not yet adopted the rule (as established in *Moberly* ) that an order setting aside a judgment under CR 60.02 may be directly appealed in certain circumstances.

**4.** A *guardian ad litem* was not necessary at this time because Goldsmith had obtained counsel.

he practiced with and Goldsmith filed a motion to remove him as counsel. Goldsmith, apparently proceeding as if unrepresented, also filed a *pro se* motion to set the matter for mediation in May of 2007. On May 31, 2007, Fifth Third responded by filing an objection to Goldsmith's motion to remove his counsel of record. Fifth Third also filed an objection to Goldsmith's motion to refer the matter to mediation. In addition, Fifth Third filed a "Motion for Order in Aid of Assignment of Rents" (claiming that any rental income Goldsmith was able to obtain from the Roderers was assigned to Fifth Third by way of a rider to the original mortgage) and a renewed motion for *in rem* summary judgment and order of sale, *nunc pro tunc* (arguing that it would be impossible for Goldsmith to produce evidence at trial to warrant judgment in his favor). The trial court denied Goldsmith's motion to set the matter for mediation and referred the remaining motions to the Master Commissioner for further proceedings and for a recommendation to the court.

A new Commissioner's hearing was set for September 6, 2007. Thereafter, Goldsmith's counsel[5] filed a response to Fifth Third's renewed motion for judgment *nunc pro tunc*, arguing that Fifth Third no longer had any claim to the properties as the mortgages had all been released. Goldsmith further argued that the doctrine of *nunc pro tunc* was not applicable to the case at hand. Instead of a Commissioner's hearing, a status conference was held on September 6, 2007, where counsel for both parties were present. In response to Goldsmith's suggestion that Fifth Third had no standing, the Commissioner's Report suggested that mortgage liens may be restored in certain circumstances under

principles of equity. The Master Commissioner also requested proof the liens had been released, which was supplied by Goldsmith's counsel thereafter.

Finally, a Commissioner's hearing was held and a report was issued on March 18, 2008. The Master Commissioner recommended in her report that Fifth Third's motion for an "Order Reinstating Mortgages, and *In Rem* Judgment and Order of Sale" be entered as Goldsmith failed to supplement the record (as previously requested by the Master Commissioner) with a response presenting any defenses to Fifth Third's motion for summary judgment. On June 24, 2008, the Jefferson Circuit Court entered the "Order Reinstating Mortgages, and *In Rem* Judgment and Order of Sale" upon recommendation of the Master Commissioner. The order purported to reinstate Fifth Third's mortgages on the properties and additionally directed the judicial sale of each property. As the properties had already been sold, the order reaffirmed the judicial sales previously conducted. Goldsmith now appeals from this judgment and order.

### Analysis

On appeal, Goldsmith argues: (1) that the trial court lacked the power to enter judgment on mortgages that no longer existed and that Fifth Third lacked standing to tender the motion for judgment for the same reason; (2) that Fifth Third failed to follow the mandates of KRS 426.006; and (3) that the trial court's ruling reduces CR 17.04 to a nullity.

█ We need not address these issues, however, as we find that the trial court improperly granted CR 60.02 relief in its September 8, 2006 order. In the Septem-

---

**5.** Apparently Goldsmith's counsel had resumed active representation of Goldsmith by this point.

ber 8, 2006 order, the trial court vacated the *in rem* summary judgment and order of sale, concluding that CR 17.04 is not discretionary, but mandatory, and requires the appointment of a *guardian ad litem* where a defendant is incarcerated and is unable to defend or ceases to defend in an action.

The trial court cited to *Davidson v. Boggs*, 859 S.W.2d 662 (Ky.App.1993), in determining that Goldsmith was entitled to the appointment of a *guardian ad litem*, noting that Goldsmith ceased to defend when he failed to respond to Fifth Third's motion for *in rem* summary judgment and failed to appear at the Commissioner's hearing. The trial court determined that Goldsmith did not waive his right to a *guardian ad litem*, citing the language in *Davidson* that the appointment of a *guardian ad litem* under "CR 17.04 is intended, in part, to prevent the failure of a prisoner to obtain counsel as being deemed a waiver of his right to due process." *Id.* at 665. Indeed, in *Davidson*, we stated that CR 17.04 "is not discretionary with the trial court. The rule does not distinguish between voluntary and involuntary absences nor does it allow consideration of whether the [defendant] possessed sufficient funds to obtain counsel of his own choosing." *Id.*

In *Davidson*, however, we acknowledged that due process rights may be waived where such waiver is "made voluntarily, intelligently and knowingly, with awareness of the legal consequences." *Id.* Although we did not expressly acknowledge the ability of a prisoner to waive his right to a *guardian ad litem* in *Davidson*, we now do so. We now expressly state that the right to the appointment of a *guardian ad litem* under CR 17.04 may be waived. However, we recognize the importance of the right and caution against careless ap-

plication of the doctrine of waiver. Notably,

> A convict may waive his right to the appointment of a legal representative, but the importance of the right is such that some courts have required that the convict make an expressed (*sic*) written waiver before the right will be deemed waived.

18 C.J.S. *Convicts* § 8. We agree with those jurisdictions which require waiver to be express, and find that waiver should not be assumed or implied in regard to CR 17.04. *See, e.g., Craigo v. Marshall*, 175 W.Va. 72, 331 S.E.2d 510, 514 (1985). As we stated in *Davidson, supra*, the rule is designed, in part, to prevent this. However, when (as here) a defendant expressly states in writing to the court that he does not wish a *guardian ad litem* to be appointed, we will recognize a waiver.

In the present case, the defendant Goldsmith stated: "I *demand* that the Court *not* appoint a guardian for this matter." (Emphasis in original). In cases such as this, where an incarcerated defendant makes an express and written waiver, he shall not be entitled to the appointment of a *guardian ad litem*. [6]

Accordingly, we find that CR 60.02 relief should not have been granted *as a matter of law* in this case because Goldsmith had expressly waived his right to a *guardian ad litem*. Furthermore, there are additional grounds why CR 60.02 relief was inappropriate in this action. To begin, CR 60.02 is not properly invoked where the movant is alleging errors which could have, in the exercise of due diligence, been raised in a direct appeal. *See, e.g., McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky.1997). *See also, Baze v. Commonwealth*, 276 S.W.3d 761, 765–66 (Ky.

---

6. We might also note that the trial court had a fine line to walk in this case, as Goldsmith's right to represent himself may have been infringed if the court *had* appointed a guardian.

2009). Here, the issue of whether a *guardian ad litem* should have been appointed could have certainly been raised in a direct appeal.

■ Finally, we find that the CR 60.02 motion was untimely and that the trial court was without jurisdiction to grant it because of the holding in *Asset Acceptance v. Moberly*, 241 S.W.3d 329 (Ky.2007). In *Moberly*, the Court decried the use of the "extraordinary circumstances" provision in CR 60.02(f) as a way to avoid the one-year time limitation found in CR 60.02(a), (b), and (c). *Id.* at 334–35. Here, Goldsmith's CR 60.02(f) claim is really one of "excusable neglect" rather than some other extraordinary circumstance. Indeed, no extraordinary circumstance exists where one waits for more than one year to seek relief to a judgment of which he must have certainly known of (or should have known of through the exercise of due diligence) much sooner. We also note that the Court in *Moberly* established that a direct appeal could be maintained from an order granting CR 60.02 relief where the movant was proceeding under CR 60.02(f) and it appears that the movant "invoked [CR 60.02(f) ] to, in effect, evade the one-year limitations period." *Id.* Moberly made clear that CR 60.02(f) should only be invoked with extreme caution and "is available only for reasons not otherwise set forth in the rule and ought not to be invoked so as to undermine the time constraints applicable to other subsections." *Id.* at 332. The Court's holding stemmed from the fact that many federal courts "have recognized a right to appeal from a trial court order setting aside a judgment . . . if the trial court lacked jurisdiction to enter it." *Id.* at 333.

■ While we acknowledge that Goldsmith *also* claimed to be proceeding under CR 60.02(d) and (e), his claims thereunder alleged fraud on the part of Fifth Third

and that the judgment was void either because of such fraud or the failure to appoint a GAL. We note that Goldsmith was wholly unable to prove fraud on the part of Fifth Third. CR 60.02 requires *extrinsic* fraud or "fraud upon the court." *Rasnick v. Rasnick*, 982 S.W.2d 218, 219–220 (Ky.App.1998). Indeed,

> Fraud upon the court is "that species of fraud which does or attempts to subvert the integrity of the court itself." Such fraud has been construed to include only the most egregious conduct, such as bribery of a judge or a member of the jury, evidence fabrication, and improper attempts to influence the court by counsel. Generally, fraud between the parties, without more, does not rise to the level of fraud upon the court. *Id.*, *quoting Wise v. Nirider*, 261 Mont. 310, 862 P.2d 1128 (1993) (Internal citations omitted).

Further, extrinsic fraud does not include "fraudulent representations or concealments made during court proceedings." *Id.*, *citing Miller v. Miller*, 273 Mont. 286, 902 P.2d 1019, 1023 (1995). Here, it could not be said that the statement by Fifth Third, even if knowingly false, would support a finding of "extrinsic fraud" as contemplated in CR 60.02(d). In light of the foregoing, it was an abuse of discretion for the trial court to grant CR 60.02 relief.

■ A trial court loses jurisdiction over a matter ten days after the entry of final judgment. *See, e.g., Silverburg v. Commonwealth*, 587 S.W.2d 241, 244 (Ky.1979). Such jurisdiction can only revived by rule or statute. Here, since the trial court erroneously invoked the post-judgment relief of CR 60.02, it had no jurisdiction to proceed. Therefore all orders of the court following the improvident order setting aside the original judgment and order of sale are void. Although Fifth Third did not cross-appeal on this issue, an appellate

court may raise jurisdiction at any time. *See, e.g., Kentucky High School Athletic Assn. v. Edwards,* 256 S.W.3d 1, 4 (Ky. 2008); *Kentucky Employers Mut. Ins. v. Coleman,* 236 S.W.3d 9 (Ky.2007).

As we find that the September 8, 2006 post-judgment order of the trial court vacating the *in rem* summary judgment and order of sale was in error, and that the trial court was without jurisdiction to proceed, the issues raised by Goldsmith on appeal have been rendered moot. Thus, we need not address whether Fifth Third had standing to file the motion for *in rem* summary judgment and order of sale after the release of its mortgages. Further, questions concerning whether joinder of the current property owners was necessary and whether Fifth Third violated KRS 426.006 are also moot.

Accordingly, we vacate the trial court's September 8, 2006 order granting Goldsmith CR 60.02 relief and all orders of the court thereafter. We also remand with instructions to the trial court to reinstate the *in rem* summary judgment and order of sale as entered by the trial court on April 4, 2005. As the original judgment and order of sale will be reinstated, the titles of the current owners of the subject properties will no longer be clouded by the Jefferson Circuit Court's June 24, 2008 "Order Reinstating Mortgages, and *In Rem* Judgment and Order of Sale."

ALL CONCUR.