RENDERED: SEPTEMBER 28, 2017
TO BE PUBLISHED

**Supreme Court of Kentucky** FINAL

DATE 10/19/17 Kim Redman, DC

2016-SC-000326-MR

WILLIAM HARRY MEECE                                          APPELLANT

ON APPEAL FROM WARREN CIRCUIT COURT
V.                      HONORABLE JOHN GRISE, JUDGE
NO. 06-CR-00656

COMMONWEALTH OF KENTUCKY                                      APPELLEE

**OPINION OF THE COURT BY JUSTICE KELLER**

**AFFIRMING**

A Warren County jury found William Harry Meece guilty of Murder (three counts); Burglary, first degree; and Robbery, first degree. The jury determined beyond a reasonable doubt that aggravating circumstances existed in each of the three murders and thereafter fixed Meece's punishment at death. This Court affirmed the Warren Circuit Court's judgment on direct appeal. Meece filed a *pro se* Kentucky Rule of Civil Procedure (CR) 60.02 motion, which was supplemented by defense counsel, that the circuit court denied. Prior to the ruling on his CR 60.02 motion, but after filing the motion, Meece also filed a motion under Kentucky Rule of Criminal Procedure (RCr) 11.42. His RCr 11.42 motion is still pending in circuit court. Having reviewed the arguments

of the parties, we affirm the trial court's order denying Meece's CR 60.02 motion.

## I.    BACKGROUND

This Court previously and extensively reviewed the record in this case on direct appeal. *See Meece v. Commonwealth*, 348 S.W.3d 627 (Ky. 2011). We refrain from unnecessarily repeating ourselves here and limit the background to the facts and procedural history that are relevant to this CR 60.02 appeal.

On February 26, 1993, Meece, at the urging of Meg Wellnitz (Wellnitz), shot and killed Wellnitz's father, mother, and brother in their Adair County home. In February of 2003, a grand jury returned indictments against Meece and Wellnitz for Burglary, Robbery, and three counts of Murder.

In 2004, Meece entered into plea discussions with the Commonwealth, and the parties reached an agreement. Meece gave two recorded statements in compliance with the agreement, confessing to all three murders and providing details as to how Wellnitz commissioned him to commit the crimes and how he did so. Wellnitz also entered a guilty plea and gave a recorded statement. Although her statement was inconsistent with Meece's in some details, the parties agreed that Meece had given Wellnitz money to purchase a Browning Hi-Power 9mm gun for Meece; Wellnitz used a fake ID to make that purchase; and Meece used that gun to kill the Wellnitzes.

Meece moved the court to withdraw his guilty plea, which the court granted. Wellnitz proceeded with her guilty plea and was sentenced in

2

accordance with her agreement with the Commonwealth.[1] The court once again set Meece's case for trial, and on September 18, 2006, the jury returned a verdict of guilty on all counts and subsequently recommended a sentence of death.

As previously stated, this Court has already reviewed this case on direct appeal and affirmed Meece's conviction and sentence. We now address Meece's CR 60.02 motion, setting forth additional background as necessary.

## II.    STANDARD OF REVIEW

Whether a Defendant is entitled to the extraordinary relief provided by CR 60.02 is a matter left to the "sound discretion of the court and the exercise of that discretion will not be disturbed on appeal except for abuse." *Brown v. Commonwealth*, 932 S.W.2d 359, 362 (Ky. 1996) (quoting *Richardson v. Brunner*, 327 S.W.2d 572, 574 (Ky. 1959)). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Foley v. Commonwealth*, 425 S.W.3d 880, 886 (Ky. 2014) (citing *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (internal citations omitted)).

## III.    ANALYSIS

Meece's original CR 60.02 motion set forth numerous grounds for relief. However, on appeal, the issues are more limited. Meece argues two broad grounds for relief: (1) several of the Commonwealth's witnesses gave perjured

---

[1] While serving her sentence, Wellnitz was found in her cell in 2014, dead from apparent suicide.

3

testimony, leading to a deprivation of his constitutional rights; and (2) the prosecutor committed fraud upon the Court, also leading to a violation of Meece's constitutional rights.

## A.    The purpose of CR 60.02 relief.

"CR 60.02 allows appeals based upon claims of error 'that were unknown and could not have been known to the moving party by exercise of reasonable diligence and in time to have been otherwise presented to the court.'" *Sanders v. Commonwealth*, 339 S.W.3d 427, 437 (Ky. 2011) (quoting *Young v. Edward Technology Group, Inc.*, 918 S.W.2d 229, 231 (Ky. App. 1995)). The rule provides an extraordinary form of relief, and "is not intended as merely an additional opportunity to raise claims which could and should have been raised in prior proceedings[.]" *Sanders*, 339 S.W.3d at 437.

"It has long been the policy of this court that errors occurring during the trial should be corrected on *direct* appeal, and the grounds set forth under the various subsections of CR 60.02 deal with *extraordinary* situations which do not as a rule appear during the process of a trial." *Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983) (quoting *Howard v. Commonwealth*, 364 S.W.2d 809, 810 (Ky. 1963) (emphasis added)). As such, "[t]he movant must demonstrate why he is entitled to this special, extraordinary relief." *Gross*, 648 S.W.2d at 856. The relief is extreme, limited, and reserved for those times when justice itself requires an avenue for the plight endured by the aggrieved party. *See id.*

4

CR. 60.02 is *not* intended to provide relief for grounds that could be attacked through direct appeals or collateral motions such as grounds under RCr 11.42. "[CR 60.02] is for relief that is not available by direct appeal and not available under RCr 11.42." *Gross*, 648 S.W.2d at 856. This Court has required that "a defendant aggrieved by a judgment in a criminal case" must first "directly appeal that judgment, stating every ground of error which it is reasonable to expect that he or his counsel is aware of when the appeal is taken." *Id.* at 857. Then, the "defendant is required to avail himself of RCr 11.42 ... as to any ground of which he is aware, or should be aware ... ". *Id.* Only after these avenues are exhausted can a defendant claim grounds for CR 60.02 relief. And the defendant cannot raise the same grounds as those for which he claimed, or should have claimed, relief on direct appeal or pursuant to RCr 11.42. *See id.* "In summary, CR 60.02 is not a separate avenue of appeal to be pursued in addition to other remedies, but is available only to raise issues which cannot be raised in other proceedings." *McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky. 1997).

Although Meece attempts to obfuscate and disguise most of his arguments, there are four main areas for which he claims relief: (1) Regina Meade perjured herself; (2) Dell Jones perjured himself; (3) Leondus Patrick perjured himself; and (4) the prosecutor, Brian Wright, committed fraud. At the outset, we must state that Meece has litigated, is currently litigating, or should have litigated all of these claims for relief. However, we address the merits of his arguments below.

5

**B.    Meece's claims of witnesses' perjury do not entitle him to CR 60.02 relief.**

Meece correctly states that CR 60.02 allows a court to provide relief from a judgment when there has been "perjury or falsified evidence." CR 60.02(c). This Court has previously addressed the issue of perjury as grounds for relief under CR 60.02. *See Commonwealth v. Spaulding*, 991 S.W.2d 651 (Ky. 1999). When a prosecutor knowingly utilizes a material, false statement against the defendant, he has committed prosecutorial misconduct through the use of perjured testimony. *Id.* at 654 (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)). The "use of perjured testimony [without the knowledge of the prosecutor] is treated like newly discovered evidence for the purposes of CR 60.02." *Spaulding*, 991 S.W.2d at 654.

"[A] criminal conviction based on perjured testimony *can* be a reason of an extraordinary nature justifying relief pursuant to CR 60.02(f)[.]" *Id.* at 657 (emphasis added). In such cases, "the burden remains on the defendant to show both that a reasonable certainty exists as to the falsity of the testimony and that the conviction probably would not have resulted had the truth been known before [the Defendant] can be entitled to [CR 60.02] relief." *Id.* According to Kentucky Revised Statute (KRS) 523.020, a person commits perjury "when he makes a material false statement, which he does not believe, in any official proceeding under an oath required or authorized by law." So, to justify relief, Meece must first show a reasonable certainty that Meade, Jones, or Patrick made a material false statement, which he or she did not believe.

6

Meece identifies Meade, Jones, and Patrick as witnesses he claims gave perjured testimony at his trial. The alleged perjurous testimony from each witness is described and addressed below.

## 1.  Regina Meade.

Regina Meade was married to Meece from 1991 to 2000. The murders occurred in 1993. While they were married, Meade did not incriminate Meece in any way for the murders of the Wellnitz family. However, after their divorce, police approached her again. This time, she told them about hearing Meece and Wellnitz discussing their plot to kill the Wellnitz family and what she had seen the night of the murders. It is undisputed that the Commonwealth agreed not to prosecute Meade for any of her potentially criminal involvement in these activities in exchange for her truthful testimony. However, at trial, when Meece's counsel questioned Meade about this plea agreement, she did not disclose it.

Defense Counsel (DC)):  Do you have any agreements with the Commonwealth regarding your testimony here today?

Regina Meade (RM):  No.

DC:  There was never any agreement between you and the Commonwealth that you would not be charged with any crime?

RM:  Not to my knowledge.

DC:  Not to your knowledge?

RM:  Not that I remember.

DC:  I take it that you've never been charged with any crimes then?

7

RM:                          Nope.

*See Meece,* 348 S.W.3d at 679.

After this exchange, counsel moved on to other subject areas. *Id.* Meade mentioned through her testimony and cross-examination that she met with the prosecutor and detectives, but, again, counsel did not question her further about any agreements that arose from this meeting. On redirect, the prosecutor did not attempt to question Meade any further about the plea agreement. *Id.*

**Regina Meade did not commit perjury.**

It is undisputed that Meade failed to state on cross-examination that she had made an agreement with the prosecution in exchange for her truthful testimony at trial. This testimony, then, was false. Additionally, it was material as it went to the credibility of her testimony. However, we cannot say with reasonable certainty that it was testimony she did not believe to be true. Meade stated that there was no agreement she remembered or knew of, but admitted that she had never been prosecuted. Additionally, she spoke during cross-examination about a meeting between her and the prosecution team. Defense counsel did not question her about the terms of this meeting. We cannot with reasonable certainty say that she believed her statements to be false, especially considering what she admitted about her communications with the prosecution. We cannot then say that the trial court's decision was arbitrary or unsupported by legal principles; thus, the trial court did not abuse its discretion in holding likewise.

**Meece has already litigated this issue.**

Despite Meece's attempts to repackage his argument regarding Meade's testimony, we addressed this issue on direct appeal. "Meece argue[d] that his Due Process rights were violated by the prosecution's failure to correct Meade's testimony in regard to any agreements she had with the Commonwealth concerning her testimony. Meece further argue[d] that her testimony was perjurous and this was known to the Commonwealth." *Meece*, 348 S.W.3d at 676. In addressing this issue, we held that "whether the misstatement by Meade was intentional or innocent under the circumstances, given that no explanation for [defense counsel's] failure to impeach Meade is given or apparent ... , one may only conclude that the failure to impeach Meade upon this allegedly false statement was strategic and tactical." *Id*. at 680.[2] This Court found that trial counsel either knew or should have known, based on the record and the trial court's findings, about Meade's plea agreement with the Commonwealth. *Id*. As such, this Court presumed the decision not to impeach Meade further was tactical and any complaint as to this perjured testimony was waived. *See id*. "[CR 60.02] is for relief that is not available by direct appeal and not available under RCr 11.42." *Gross*, 648 S.W.2d at 856. Thus, this issue has been previously litigated and resolved and cannot be a source of relief for this claim.

---

[2] Despite Meece's attempts to characterize this Court's Opinion as finding that Meade had perjured herself, we made no such finding. We only determined that whether the statement was "intentional or innocent" was irrelevant given Meece's knowledge of the plea agreement and ensuing failure to impeach on this issue.

9

## 2.    Dell Jones.

In 1993, during the course of the murder investigation, Dell Jones attempted to conduct a polygraph examination of Meece. *Id.* at 668. When Jones began questioning Meece about the Wellnitz murders, "Meece demanded the polygraph cease." *Id.* at 687. Jones stated that "from the time of Meece's request to terminate the polygraph, and during the process of his disconnecting the leads from Meece, their conversations dealt only with paperwork ... (a second *Miranda* waiver), along with the nature of the actual questions on the test ... ". *Id.* at 687-88. The trial court admitted Jones's testimony over Meece's objection. *Id.* at 688. At trial, Jones provided an abbreviated testimony and stated that "at one point, [Meece said] that there had been sixteen rounds fired."[3] *Id.* Later, Kentucky State Police (KSP) Det. Wheat testified that he had not released the number of shots fired. *Id.*

## Dell Jones did not commit perjury.

Meece's argument as to Dell Jones's alleged perjury is based upon a distortion of facts: "Assuming [Dell's statement that Meece was free to leave] was true, the form [Meece] signed would not have been a *Miranda* waiver of rights, because he would not have been in custody." Meece argues that because this Court termed the form he signed as a "*Miranda*" waiver, he <u>must</u> have been in custody and thus, Dell Jones and the officers involved <u>must</u> have lied about his ability to leave. To Meece, the conclusion is that Jones

---

[3] There were actually 17 shots fired, a contradiction which Meece also addressed in his statement to police when he confessed.

10

committed perjury when he testified that Meece was free to leave during his questioning.

The determination of whether a suspect is in custody for *Miranda* purposes is a legal determination requiring an examination of the totality of the circumstances. Meece's argument presupposes that by signing a *Miranda* waiver, the signer suddenly becomes "in custody." We cannot, and will not, contradict well-established law by holding that a signature on such a form creates, *de facto*, a finding that the signer was in custody.

Meece has presented no evidence that Jones believed his statement, that Meece was free to leave, was a lie. There is no evidence or even any allegation, other than Meece's confusion regarding *Miranda* law, that Jones's statement was false. Meece has failed to prove with reasonable certainty that Jones made a false statement. We see no reason to find the trial court abused its discretion in holding that these claims of perjury were unfounded.

**Meece has already litigated this issue.**

Meece claims that, had Jones told the truth, Meece's statements to him would have been excluded because Meece was in custody and the statements were made involuntarily. We recognize Meece's attempt here to use a claim of perjury as an opportunity to relitigate the exclusion of his statements to Jones. Meece argued to the trial court that the *Miranda* waiver he signed before Jones began the polygraph was involuntary, and Meece sought to suppress the statements he made to Jones. The trial court overruled the motion. Meece also addressed the issue in his appeal to this Court. This Court upheld the

11

trial court's admission of the statements. *See Meece*, 348 S.W.3d at 688. On appeal, we held that "his argument that he was deceived as to the nature of the test is unavailing." *Id.*

Although he argues now that Jones perjured himself, this alleged perjury involves whether Meece was free to go, which Meece argues, in turn, affects whether his *Miranda* waiver was valid. Meece restates this claim as an allegation of perjury but it is only an attempt to camouflage his real contention: that he was not free to go and his statements were involuntary. We are not distracted from the truth, however, that this issue, like Meece's argument as to Meade's testimony, has been previously litigated and CR 60.02 cannot provide a basis for relief on this issue either.

### 3. Leondus Patrick III.

Leondus Patrick III worked at Sports Unlimited, the store where Meece and Wellnitz purchased a Browning Hi-Power 9mm gun and ammunition, the same month as the murders. Patrick testified that he had sold Meece two to three boxes of hydra-shok ammunition along with the gun. On cross-examination, Patrick testified that he thought another employee had sold Meece 1,000 rounds of ammunition on a separate occasion. During the second redirect examination, Patrick stated the 1,000 rounds were USA, full metal jacket ammunition, which he described as a cheaper ammunition for target shooting which could be bought more affordably in larger supply at one time.

**Patrick did not commit perjury.**

Meece contends that Patrick's testimony that Meece bought 1,000 rounds of ammunition "was false...[because Meece], in fact, had purchased less than half of that ammunition." Meece implies that Patrick's alleged perjury regarding the number of bullets purchased called into question his entire testimony, including his identification of Meece as being present at the purchase of the murder weapon.[4]

Once again, Meece argues that because he disagrees with the statements made by a witness, that witness has committed perjury. Meece alleges that Patrick's statement is false because he bought less ammunition than 1,000 rounds. However, he fails to allege or point to any reason for the trial court to find that Patrick intentionally gave a false statement believing it to be untrue. As such, we cannot say that the trial court's decision was arbitrary or that the trial court abused its discretion in dismissing these claims of perjury.

**Meece should have raised the issue on direct appeal and has already raised this issue in his RCr 11.42 motion.**

Meece has failed to identify any new information which was unknown at the time of trial or at the time of his appeal. Every "defendant is required to avail himself of RCr 11.42 ... as to any ground of which he is aware, or should be aware ... ". *Gross*, 648 S.W.2d at 857. Meece argued that Patrick lied about the number of rounds Meece had purchased; but Meece was present for the purchase in question. Thus, Meece was in the perfect position to attack this

---

[4] Meece admitted to being present at the purchase of the gun, both in his recorded statement and at trial, and admitted to buying 11 total boxes of ammunition.

13

statement and did refute Patrick's testimony during his own testimony to the jury. CR 60.02 is an improper avenue to address the issues raised about Patrick. Additionally, Meece has raised this issue in his RCr 11.42 motion, which has yet to be resolved.

## 4. Even if these three witnesses committed perjury, there is no reasonable certainty that the result would have been different.

A defendant alleging perjury under CR 60.02 must not only show a reasonable certainty that the testimony was false but must also show a reasonable certainty "that the conviction probably would not have resulted had the truth been known ... ". *Spaulding,* 991 S.W.2d at 657. Meece must also show with reasonable certainty that his conviction would not have occurred but for this allegedly perjured testimony. We hold that no such reasonable certainty has been shown.

The Commonwealth presented a mountain of evidence against Meece, including his recorded statements in which he confessed to the murders in graphic detail. If we accept Meece's argument as true, then the jury would have had three variations in the testimony before it: (1) the jury would have known of Meade's agreement with the Commonwealth; (2) Meece's statement to Dell Jones about the "16 rounds" likely would not have been admitted; and (3) the jury would have known Meece had bought only about 500 rounds of ammunition, rather than 1,000. Given Meece's two statements, coupled with the corroborating evidence admitted at trial (including the testimony of his co-defendant), we cannot conclude that the jury would have reached a different result "had the truth been known." We hold that Meece failed to show a

14

reasonable certainty that any perjury, even if it was proven, would have changed the outcome of his trial.

## C. The allegations of fraud.

Meece's argument as to the prosecutor's fraud in this case is, unfortunately, confusing and unclear. However, it appears Meece's claim is that Brian Wright, the lead prosecutor at trial against Meece, committed fraud by: (1) misrepresenting the terms of Meece's plea agreement; (2) allowing Meece to misrepresent the terms of his agreement to the Court during the plea colloquy; (3) reiterating this misrepresentation during Meece's cross-examination and during the Commonwealth's closing argument; and (4) lying to the Court about the terms of the plea agreements with Meece, Wellnitz, and Meade. Most of Meece's argument stems from Meece's and Wright's fundamental disagreement as to what the terms of Meece's plea agreement were. To clarify Meece's argument, we have separated his claims into the above-described segments, which we address below.

### 1. Fraud under CR 60.02.

For fraud to create a mechanism of relief under CR 60.02, there must be "*extrinsic* fraud or 'fraud upon the court.'" *Goldsmith v. Fifth Third Bank*, 297 S.W.3d 898, 904 (Ky. App. 2009) (emphasis original) (quoting *Rasnick v. Rasnick*, 982 S.W.2d 218, 219-20 (Ky. App. 1998)). The fraud described under CR 60.02 is a "species of fraud which does or attempts to subvert the integrity of the court itself." *Goldsmith*, 297 S.W.3d at 904 (quoting *Rasnick*, 982 S.W.2d at 219-20 (internal citations omitted)). This "fraud has been construed

15

to include only the most egregious conduct, such as bribery of a judge or a member of the jury, evidence fabrication, and improper attempts to influence the court by counsel." *Goldsmith*, 297 S.W.3d at 904 (quoting *Rasnick*, 982 S.W.2d at 219-20). "[F]raud between the parties, without more, does not rise to the level of fraud upon the court." *Goldsmith*, 297 S.W.3d at 904 (quoting *Rasnick*, 982 S.W.2d at 219-20).

The fraud covered by CR 60.02 is generally "fraudulent conduct outside of the trial which is practiced upon the court, or upon the defeated party, in such a manner that [the defeated party] is prevented from appearing or presenting fully and fairly his side of the case." *McMurry v. McMurry*, 957 S.W.2d 731, 733 (Ky. App. 1997) (quoting W. Bertelsman and K. Phillipps, *Kentucky Practice* CR 60.02, cmt. 6, at 426 (4th ed. 1984)). The important matter here is that the party victimized by the fraud was unable to adequately defend himself. *See id.*

To grant relief due to fraud, two prongs must be met: "(1) fraud and circumvention of the prevailing party which prevented a defense being presented, and (2) that the defendant had and has a meritorious defense to the action." *Mauldin v. Bearden*, 293 S.W.3d 392, 397 (Ky. 2009) (emphasis removed) (quoting *Rice v. Dowell*, 322 S.W.2d 468 (Ky. 1959) (internal citations omitted)). Thus, simply alleging fraud is insufficient. The movant must also show that there was a "valid defense" he was prevented from presenting due to the alleged fraud. *Mauldin*, 293 S.W.3d at 397-98 (citing *Dawson v. Clelland*, 252 S.W.2d 694 (Ky. 1952) and *Overstreet v. Grinstead's Adm'r*, 140 S.W.2d

16

836 (Ky. 1940)). In order to prevail in his motion, Meece must show that this fraud was present and that it hindered his "meritorious" defense.

## 2. None of Wright's conduct in describing Meece's plea agreement constitutes fraud.

Most of Meece's arguments about Wright's alleged fraud flow from a basic disagreement as to the terms of Meece's original plea agreement. Due to this disagreement, Meece now argues that any references Wright made to this plea agreement were fraudulent as Wright misrepresented the terms of the agreement. Meece claims that these references occurred in multiple circumstances, each of which we will describe below. But, to fully articulate Meece's argument, we must understand the context created by the plea agreement itself.

Meece contends that Wright guaranteed Meece an "extended" visit with his children as a condition of his plea agreement. Wright stated that there was no such guarantee, merely a statement that he would not interfere with any such visitation. Meece and Wright discussed Meece's visit with his children during one of his recorded interviews. That interview was played to the jury at trial. The parties stated:[5]

| Wright: | Bill, you still agree that you will testify in this case? |
|---|---|
| Meece: | Uh, as long as everything goes the way it's supposed to go. |
| Wright: | What do you mean by that? I want to know on this tape. On the visit. |

---

[5] This excerpt is taken from the transcript provided by Meece in his motion to vacate convictions and sentences under RCr 11.42, RCr 10.02, and RCr 10.06.

Meece:     It is part of the agreement that I will get to have a [*sic*]
           extended visit with my children. And that visit has
           been scheduled to the best of my knowledge for the
           21st of December and that as long as that visit goes off
           without any hitch, (*background noise*) my agreement to
           testify in trial.

Wright:    And the only obligation I made was that I would not do
           anything to hinder that visit and at the beginning that
           I would encourage your attorney.

Meece:     You'd do the best you could to see that come to pass.

Wright:    And I've done my – I've fulfilled my end, is that
           correct?

Meece:     Yes, to the best of my knowledge, you've fulfilled your
           _____ 6

Now, we examine the instances in which Meece claims Wright

fraudulently misled the court or jury as to this agreement.

**The plea agreement itself.**

As a preliminary step to understanding and addressing Meece's claims of

fraud, we must first address this plea agreement and any promised visitation.

It is clear to this Court from this transcript that Meece admitted there was no

such guaranteed visitation as a condition to his plea agreement. Meece stated

that he felt Wright had fulfilled any obligations he felt Wright had. We will not

assume that Wright misrepresented the terms of this agreement when Meece is

quoted as agreeing to the terms as Wright and the Commonwealth described.

---

6 It is presumed that this blank represents an inaudible portion of the interview;
this portion has been copied exactly from Meece's motion to vacate as described in
footnote 5.

This transcript clearly shows that the Commonwealth merely intended not to prevent any visitation between Meece and his children.[7]

CR 60.02 fraud entails acting in a way to "subvert the integrity of the court." *See Goldsmith*, 297 S.W.3d at 904 (quoting *Rasnick*, 982 S.W.2d at 219-20 (internal citations omitted)). What Meece has described is a disagreement as to what was required by his plea agreement. Meece has failed to show any *intentional conduct* on the part of the prosecutor to misrepresent this plea agreement to the court and thereby subvert the integrity of the judicial process. He has failed to allege or show that Wright misrepresented the plea agreement at all; Meece simply disagrees with Wright's interpretation of the agreement. Thus, Wright has not committed fraud upon the court.

**Meece's plea colloquy.**

Meece does not define this instance of fraud specifically, but he described his plea colloquy during his testimony and presented it as further proof of Wright's fraud. Meece's allegations of fraud intertwine several instances referring to his plea agreement, but we must unpackage each instance he describes to accurately understand and address the merits of his argument.

During his plea colloquy, Meece told the judge that the written plea agreement was the only agreement he relied upon in entering his plea. He stated that all the terms of the agreement were included in this written offer. He now contends that his visit with his children was a term of the offer; that

---

[7] It should also be noted that Meece did, in fact, have a visit with his children after he entered a guilty plea. Meece testified that he immediately filed his motion to withdraw his guilty plea at the end of that visit.

19

Wright intentionally failed to include it in the written agreement; and that Wright allowed Meece to lie to the Court about all the terms of his agreement being in the written offer. This, to Meece, constitutes fraud upon the Court.

Once more, we look to the transcript we have quoted. Because we disagree with Meece's interpretation of his plea agreement, we cannot agree that there was any fraud during Meece's plea colloquy. Wright did not include the visit in the written plea agreement because he did not see it as a condition of the offer. Thus, his failure to stipulate this condition during the plea colloquy cannot constitute "fraud upon the court."

We must also state that any fraud during the plea colloquy was on the part of Meece alone. He testified at trial that he never intended to follow through with the plea agreement. This fact was further evidenced by his immediate motion to withdraw his guilty plea after he had visitation with his children. He entered the guilty plea, knowing he was lying to the court the entire time. Thus, his allegations of fraud against Wright here cannot provide him with a basis for relief.

**Wright's cross-examination of Meece.**

Meece chose to testify at trial. During his testimony, he explained to the jury that he and Wellnitz were not involved in the murders and were, in fact, studying the night of the murder. To enhance the credibility of his testimony, Meece claimed that he used the discovery provided by the prosecution in his case to develop his "story" about what happened to the Wellnitz family. Furthermore, Meece explained that he thought his statements after the guilty

20

plea would never be used against him and that he never intended to follow through with the plea agreement. His whole purpose in entering a guilty plea was to see his children. Finally, Meece testified that Wright promised him that, as a condition of his guilty plea, he would have an "extended" visit with his children. [8] On cross-examination, Wright questioned Meece as to the terms of his plea agreement, contradicting him and asking whether the actual agreement was that Wright would not interfere with any visitation with Meece's children.

Once again, the alleged fraud stemmed from Meece's interpretation of his plea agreement. As can be seen in the transcript of the exchange between Meece and Wright, Wright intended only to abstain from interfering with any visitation between Meece and his children and felt that he had fulfilled this promise. As such, it was not fraudulent for Wright to cross-examine Meece about Meece's mistaken interpretation of the agreement.

**Wright's closing argument.**

During closing argument, Wright brought out a transcript of the interview we previously described. In his brief, Meece quotes what he deems the relevant portion of this closing argument:

---

[8] During his testimony, Meece referenced a fax between Meade's attorney (Meade is the mother of Meece's children) and Wright, in which Meade's attorney told Wright that Meade would allow the visit between Meece and his children if Meece entered a guilty plea. Meece believes this fax to be proof of Wright's fraud. However, even in the light most favorable to Meece, this fax merely shows Wright's knowledge of an agreement to allow this visitation on Meade's part. It exhibits Wright's agreement not to hinder or interfere with any visitation; at most, it shows Wright's intent to act as a mediator between the parties in scheduling the visitation. It does not prove Wright guaranteed the described visitation as a term of Meece's plea agreement.

21

> The only obligation I made was to do nothing to hinder the agreement. He told you he had a private attorney in Lexington. Regina had a private attorney. I had no involvement in that. I said the Commonwealth fulfilled its end ... To come up here and imply we did something wrong. There is no proof. It doesn't exist.

Meece seems to believe that Wright's statements were not only a misrepresentation of the truth but that Wright also improperly testified to the jury about the plea agreement. We cannot conclude that the described statements were fraudulent. Wright properly referred to an interview already in evidence. As admitted evidence, Wright was free to reference the statement during closing argument. *See Tamme v. Commonwealth*, 973 S.W.2d 13, 39 (Ky. 1998). Any statements as to Wright's understanding of this agreement are not even close to what this Court has considered fraud upon the Court under CR 60.02; as we stated, such "fraud has been construed to include only the most egregious conduct, such as bribery of a judge or a member of the jury, evidence fabrication, and improper attempts to influence the court by counsel." *Goldsmith*, 297 S.W.3d at 904 (quoting *Rasnick*, 982 S.W.2d at 219-20). Considering we have already stated that Wright clearly intended only to refrain from interfering with Meece's visit with his children, no such fraud exists here.

### 3. None of Wright's conduct in presenting witnesses' testimony constitutes fraud.

The last portion of Wright's conduct that Meece attacks is his explanation of the terms of the Commonwealth's plea agreements with Meece, Wellnitz, and Meade. The Commonwealth repeatedly told the trial court and, in some instances, the jury, that a condition of these plea agreements was that

22

each witness testify truthfully at trial. Meece appears to claim that, due to the inconsistencies of each witness's (Meece, Wellnitz, and Meade) description of the murders, some or all of them must be lying. Therefore, Meece appears to assume that Wright fraudulently lied to the trial court about the requirement of truthfulness for each of these plea agreements.

We are unpersuaded by Meece's claims here. We understand Meece to argue that inconsistencies in his, Wellnitz's, and Meade's testimony require the conclusion that some or all of them lied at trial and that Wright knew of these inconsistencies and thus understood that the witnesses were lying. Meece then seems to claim that, because Wright followed through with the plea agreements for Wellnitz and Meade, he fraudulently lied to the Court about the requirement of truthfulness. We certainly cannot conclude that this argument entitles Meece to CR 60.02 relief; nor can we conclude that Meece's argument even logically follows established law.

Meece's argument is based on three unproven, false premises. First, Meece assumes that one, if not all, of the witnesses intentionally lied. This trial occurred thirteen years after the murders, and we cannot assume that every single discrepancy is an intentional lie or perjury. Memories alter and that is why we place value in a jury's truth-finding ability. The jury heard all the evidence, even the inconsistent evidence, and deemed Meece's evidence less credible than the prosecution's.

Second, Meece assumes that the Commonwealth cannot continue with a plea agreement if the agreement is not followed exactly, with every single term

23

performed perfectly. This Court is unwilling to dictate what the Commonwealth must or must not do with its plea agreements. If the Commonwealth determines it is more appropriate to continue with the terms of a plea agreement, even if a Defendant fails to fulfill all of his or her obligations, that is the Commonwealth's prerogative.

Finally, Meece assumes that Wright's statement must be fraudulent due to these testimonial inconsistencies. Meece makes an illogical leap to this conclusion. Wright accurately stated that "truthfulness" was a term of Meece's, Meade's, and Wellnitz's plea agreements. Then he presented their testimony and statements to the jury. From there, it was up to the jury to determine the veracity and credibility of this evidence. There is no fraud present.

**4.      Even if Wright had committed fraud, Meece's defense was not impeded.**

Under our jurisprudence, Meece cannot simply claim fraud and emerge victorious from a motion for CR 60.02 relief. As we have reiterated, CR 60.02 is a means of extraordinary relief and requires a greater showing of proof. Thus, a defendant claiming relief must also show that the alleged fraud hindered his otherwise "meritorious defense." *See Mauldin*, 293 S.W.3d at 397 (Ky. 2009) (quoting *Rice*, 322 S.W.2d 468 (internal citations omitted)). Meece has failed to show how his defense was hindered in any way by Wright's alleged fraud.

Although we have delineated Meece's fraud allegations into multiple portions, in essence, Meece simply argues: Wright misrepresented my plea agreement to the jury and the court and allowed plea agreements for witnesses that I think lied. What Meece fails to emphasize is that he provided a robust

24

defense as to these two areas. Meece testified, at length: about the reason for his guilty plea; about how the Commonwealth lied to him about his visit with his children; about how he lied to get that visit with his children at the time of the guilty plea; and about how Wright knew Meece was lying about the terms of his plea agreement. Meece attacked the credibility of the other witnesses against him and he attacked the veracity of Wellnitz's confession. He had ample opportunity to present this defense to the jury. But, the jury chose not to believe him and found the evidence against him more persuasive. Simply because his strategy was unsuccessful does not substantiate a claim of fraud. The trial court did not abuse its discretion in finding a complete lack of any basis for an allegation of fraud in this case.

We must also remark on the irreconcilable contention from Meece that, if not for Wright's false statements, "the trial court would have been forced to find that the Commonwealth breached its end of the plea agreement [with Meece]." If this had occurred, Meece claims that his "false, inculpatory, 2004 statements would not have been admissible at trial." There is a basic fallacy to this argument he fails to recognize. He testified, of his own volition, at trial that he *never intended* to follow through with this plea agreement. He planned to, and did, withdraw his plea as soon as his visit with his children was complete. He admitted that he enacted this plea under his own false belief that his statements would never be admissible against him at trial.

Thus, whether the Commonwealth breached its portion of the plea agreement is irrelevant. Meece's statements were made voluntarily, *without an*

25

*intent to ever complete the agreement* with the Commonwealth. Meece cannot now claim his defense was hindered by the Commonwealth's refusal to complete the terms of this agreement when he never intended to perform the agreement. These arguments cannot be resolved. Meece cannot intend to break the agreement, receive a benefit from the agreement, and then claim the other party is at fault for not performing. In sum, Meece cannot show that his defense was impeded by the Commonwealth's non-performance when he never intended to testify according to the terms of the plea agreement.

## D.    Relief under CR 60.03.

Alternatively, Meece claims relief under CR 60.03. Meece correctly relates the rule under CR 60.03 that "Rule 60.02 shall not limit the power of any court to entertain an independent action to relieve a person from a judgment, order or proceeding on appropriate equitable grounds." He fails to relate the last portion of the rule, however. "Relief shall not be granted in an independent action if the ground or relief sought has been denied in a proceeding by motion under Rule 60.02, or would be barred because not brought in time under the provisions of that rule." *Id.*

This rule is intended as an equitable form of relief when no other avenue exists. *See Bowling v. Commonwealth*, 163 S.W.3d 361, 365 (Ky. 2005). Relief requires a showing of three elements: "Claimants must (1) show that they have no other available or adequate remedy; (2) demonstrate that movants' own fault, neglect, or carelessness did not create the situation for which they seek equitable relief; and (3) establish a recognized ground ... for the equitable

26

relief." *Id.* (quoting *Campaniello Imports, Ltd. V. Saporiti Italia S.p.A.*, 117 F.3d 655, 662 (2nd Cir. 1997) (emphasis removed)). If an adequate remedy was available in the original proceedings, CR 60.03 does not provide grounds for equitable relief. *Bowling*, 163 S.W.3d at 365 (internal citations omitted).

We have already held that the issues raised by Meece were addressed on direct appeal, are better served in an RCr 11.42 motion, or are meritless. We see no separate equitable relief warranted under the facts presented, thus, Meece is not entitled to relief under CR 60.03.

**E.    Meece's CR 8.04 argument.**

Meece also alleged that because the Commonwealth did not "specifically" deny all of Meece's allegations in his CR 60.02 motion, "the Commonwealth must be deemed to have admitted" them pursuant to CR 8.04. The Commonwealth cites an unreported case in which the Court of Appeals held that CR 8.04 does not apply to a CR 60.02 motion, as it does not require a responsive filing and is inconsistent with the Rules of Criminal Procedure.

It is not necessary at this time to determine whether CR 8.04 applies to CR 60.02 filings because the Commonwealth did respond to Meece's CR 60.02 motion. CR 8.04 simply states that "[a]verments in a pleading to which a responsive pleading is required are admitted *when not denied* in the responsive pleading" (emphasis added). The Commonwealth flatly denied in its response to Meece's CR 60.02 motion that any witness committed perjury or that Wright committed fraud, and the Commonwealth explained why Meece's arguments fail. Clearly, these issues are all in dispute – most of them have been litigated

27

before and they have been argued and disputed extensively. Thus, CR 8.04 does not require us to hold that all of Meece's arguments are considered to be admitted as true.

## IV. CONCLUSION

This Court has repeatedly held that the relief offered by CR 60.02 is extraordinary. However, we have also repeatedly held that CR 60.02 is not a method by which parties can reexamine issues already decided or for which there are other avenues of relief. Meece's motion has disguised direct appeal and RCr 11.42 arguments in an attempt to persuade this Court into providing the equitable relief afforded by CR 60.02. We are not persuaded, and, for the foregoing reasons, we affirm the Warren Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Katherine Blair
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Jeffrey Allan Cross
Assistant Attorney General