RENDERED: JULY 8, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0379-MR

JORDAN WISE                                              APPELLANT

v.
APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 16-CR-00264-001

COMMONWEALTH OF KENTUCKY                                 APPELLEE

AND

NO. 2021-CA-0137-MR

JORDAN WISE                                              APPELLANT

v.
APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE THOMAS D. WINGATE, JUDGE
ACTION NO. 16-CR-00264-001

COMMONWEALTH OF KENTUCKY                                 APPELLEE

** ** ** ** **

BEFORE:  JONES, MAZE, AND TAYLOR, JUDGES.

JONES, JUDGE:  Jordan Wise appeals from two orders entered by the Franklin Circuit Court denying two separate motions to vacate his sentence pursuant to RCr[1] 11.42, CR[2] 60.02, or CR 60.03.  After a thorough review of the record, we affirm.

## I. BACKGROUND

Wise and his co-defendant, Austin May, were charged in Franklin Circuit Court with offenses relating to the home invasion of an acquaintance, seventeen-year-old Noah Rasenfoss.  On the morning of August 4, 2016, Noah and his friend, Lee Criscillis, were sleeping when they heard a knock on the door.  When Noah answered the door, Wise and May forced their way inside.  At this point, Wise engaged in a physical altercation with Noah, while May ran to Noah's room.  May would later admit at Wise's trial that he was specifically looking for a small lockbox or safe in Noah's bedroom which he knew contained Noah's savings.

Wise and May were initially wearing bandanas and hooded sweatshirts to disguise their appearances; however, the bandanas slipped down off

---

[1]  Kentucky Rules of Criminal Procedure.

[2]  Kentucky Rules of Civil Procedure.

their faces during the fighting. While Lee was helping Noah try to fight off Wise, May emerged from Noah's bedroom with the safe. A short scuffle continued among the four young men, in the course of which Noah suffered some injuries, including a split wound to his head. Wise and May eventually managed to escape with the safe.

After patching up his injuries and telephoning his mother, Noah left the house with Lee in an attempt to locate Wise and May and Noah's safe. Noah's mother happened to be friendly with May's mother, and the two women also began searching the neighborhood for Wise and May. May's mother repeatedly called May's cellular telephone, in an attempt to get him to return the safe and thereby avoid involving the police. May's mother was unable to convince May to return the safe, but she learned from her son that Wise and May's motive for the crime was to acquire bond money for a third friend, Ravon Woodhouse, who had been recently arrested. Noah and Lee ultimately reported the home invasion to the Frankfort Police Department. Wise and May were arrested the next day and charged with first-degree robbery and second-degree assault. May accepted a guilty plea and thereafter testified against Wise at his trial.

At Wise's trial, the Commonwealth presented testimony from Noah and Lee, both of whom identified Wise and May as the perpetrators of the home invasion. Both Noah and Lee recognized the two intruders because they all had

-3-

attended the same high school. In addition, both Noah and Lee had known May from childhood onward, with Lee specifically stating that he had known May "almost [his] whole life." The Commonwealth also presented testimony from Noah's mother and May's mother about their part in the search, including testimony from May's mother about her phone conversations with her son. Finally, the Commonwealth presented testimony from May, who admitted he and Wise had robbed Noah during this incident, although he denied there was any sort of physical altercation. He also testified that the robbery was Wise's idea and motivated by Wise's desire to provide bond for Woodhouse.

Wise's defense at trial was centered on shaking Noah and Lee's positive identifications of Wise and May as the intruders. During cross-examination, Wise's counsel specifically attempted to draw the jury's attention to the fact that the statements Noah and Lee provided to police did not identify Wise and May by name. The defense also attempted to show that Noah and Lee had driven around their neighborhood and accused other young men of being the perpetrators before then accusing Wise and May. The defense introduced testimony from Daniel Childress and Chris Mays (no relationship to the co-defendant), both of whom testified that Noah had erroneously accused Childress and Mays's son of the robbery. Finally, Wise testified in his own defense, claiming that he, his girlfriend, and May went to the detention center and bonded

Woodhouse out with their own money, then went back to his apartment. In a somewhat combative exchange with the prosecutor, Wise also testified that his father was wealthy and drove a luxury automobile, and so Wise had no need to rob anyone.

After the close of evidence in the case and following deliberation, the jury found Wise guilty of first-degree robbery[3] and fourth-degree assault.[4] Before the penalty phase, the prosecutor, defense counsel, and the trial court conversed at the bench and mistakenly agreed that the penalty for first-degree robbery in this case would be subject to parole eligibility after serving twenty percent of the sentence.[5] Both the prosecutor and defense counsel presented arguments to the jury grounded in this belief. After deliberation, the jury recommended a term of

---

[3] Kentucky Revised Statutes (KRS) 515.020, a Class B felony.

[4] KRS 508.030, a Class A misdemeanor.

[5] Interpretation of KRS 439.3401, regarding parole for violent offenses, repeatedly appears as an issue in our appellate courts. The "violent offender" designation is significant for those convicted of a crime because violent offenders are not eligible for parole until eighty-five percent of the sentence has been served. KRS 439.3401(3)(a). KRS 439.3401(1) defines violent offenders as those who have been convicted of or who have pleaded guilty to capital offenses, Class A felonies, or Class B felonies involving death or serious physical injury to a victim. The statute also directs the trial court to designate in its judgment if a victim suffers death or serious physical injury. Appellants frequently claim that a trial court's failure to identify death or serious physical injury must mean that violent offender sentencing will not apply. However, KRS 439.3401(1) provides a list of offenses for which conviction is automatically considered to be a violent offense, regardless of whether death or serious physical injury has been suffered by the victim, and KRS 439.3401(1)(n) enumerates first-degree robbery as one of those offenses. *See, e.g.*, *Lee v. Kentucky Dep't of Corrections*, 610 S.W.3d 254, 262-63 (Ky. 2020); *Benet v. Commonwealth*, 253 S.W.3d 528, 533 (Ky. 2008); *Fambrough v. Dep't of Corrections*, 184 S.W.3d 561, 563 (Ky. App. 2006).

twelve years' imprisonment for the robbery conviction and a six-month sentence for the assault conviction.

Following the trial, but before final sentencing, the prosecutor, Wise's trial counsel, and the trial court learned of their mistake regarding parole eligibility for first-degree robbery. To remedy the error, the trial court sentenced Wise to a term of ten years' imprisonment, the minimum sentence for a first-degree robbery conviction. Nevertheless, in his sole issue on appeal, Wise asserted the trial court had erroneously permitted counsel to misadvise the jury regarding parole eligibility. This Court affirmed the conviction and sentence on direct appeal in an unpublished opinion. *Wise v. Commonwealth*, No. 2018-CA-000252-MR, 2018 WL 6721317 (Ky. App. Dec. 21, 2018). We noted that "nothing could be accomplished by resentencing," because Wise had already received the minimum sentence, and he "raised no claim of error supporting a reversal of the guilty phase verdict[.]" *Id*. at *2.

On December 26, 2019, with the aid of his appellate counsel, Wise moved to vacate his conviction under RCr 11.42, arguing he suffered ineffective assistance of trial counsel. Wise specifically argued that trial counsel had: (1) failed to advise him that KRS 439.3401 required him to serve eighty-five percent of his sentence for first-degree robbery before being eligible for parole; (2) failed to advise him as to the range of penalties for first-degree robbery or second-degree

-6-

assault; (3) failed to advise him of the Commonwealth's plea offer; and (4) failed to impeach witnesses at his trial with their prior inconsistent statements. The trial court denied this motion on February 25, 2020, and Wise filed his notice of appeal on March 13, 2020.

Shortly after filing the notice of appeal stemming from the denial of his RCr 11.42, Wise retained new counsel and filed a second motion to vacate judgment pursuant to RCr 11.42, CR 60.02, or CR 60.03. In this motion, Wise argued he suffered ineffective assistance of appellate counsel (IAAC) when his attorney "fail[ed] to raise significant and reversible issues on direct appeal that, essentially, forfeited his right to a review of those errors that occurred during the trial; and then improperly represented [Wise] in a motion pursuant to RCr 11.42, when it was patently clear that previous counsel's own performance was at issue in said 11.42." (Record in No. 2021-CA-0137 (R.) at 1.)

In this second motion, Wise claimed the following: (1) appellate counsel failed to brief a mistake in the jury instructions, resulting in a non-unanimous verdict; (2) appellate counsel failed to brief certain allegedly improper references to co-defendant May's guilty plea and conviction; (3) appellate counsel failed to brief the prosecutor's improper impeachment of May, his own witness; and (4) appellate counsel labored under an actual conflict of interest by continuing as counsel on an RCr 11.42 motion. Wise admitted that RCr 11.42 motions

-7-

alleging ineffective assistance of postconviction counsel are ordinarily disallowed, but he argued that relief was proper here because these IAAC claims could not have been presented in the previous motion because of his previous attorney's conflict of interest in doing so. In the event of his current claims not being cognizable under RCr 11.42, Wise urged the trial court to consider them under CR 60.02 or CR 60.03. On October 2, 2020, the trial court denied the motion in a very thorough fourteen-page opinion which considered and rejected each of Wise's new IAAC arguments. The trial court also concluded that Wise's claims did not entitle him to relief under CR 60.02 or CR 60.03. Wise subsequently filed a new notice of appeal stemming from the denial of this motion, and both appeals were consolidated for our review as follows.

## II. STANDARDS OF REVIEW

Because Wise presents multiple competing vehicles seeking relief, we must briefly address the various standards of review for each. First, a successful petition for relief under RCr 11.42 based on ineffective assistance of counsel must survive the twin prongs of "performance" and "prejudice" provided in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), *accord Gall v. Commonwealth*, 702 S.W.2d 37 (Ky. 1985). The "performance" prong of *Strickland* requires as follows:

> Appellant must show that counsel's performance was
> deficient. This is done by showing that counsel made

-8-

> errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment, or that counsel's representation fell below an objective standard of reasonableness.

*Parrish v. Commonwealth*, 272 S.W.3d 161, 168 (Ky. 2008) (internal quotation marks and citations omitted). The "prejudice" prong requires a showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016) (quoting *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064).

Both *Strickland* prongs must be met before relief pursuant to RCr 11.42 may be granted. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. This is a very difficult standard to meet. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). We review counsel's performance under *Strickland de novo*. *McGorman*, 489 S.W.3d at 736.

Second, the standard of review for RCr 11.42 is altered slightly when addressing IAAC claims. To show ineffective assistance of appellate counsel, the defendant must show "the issue appellate counsel failed to brief was 'clearly stronger' than the issues that it did brief on appeal." *Commonwealth v. Pollini*, 437 S.W.3d 144, 149 (Ky. 2014) (quoting *Hollon v. Commonwealth*, 334 S.W.3d 431,

436 (Ky. 2010)). Ineffective assistance of appellate counsel also "requires a showing that absent counsel's deficient performance there is a reasonable probability that the appeal would have succeeded." *Hollon*, 334 S.W.3d at 437.

Third, "[w]e review the denial of a CR 60.02 motion for an abuse of discretion." *Diaz v. Commonwealth*, 479 S.W.3d 90, 92 (Ky. App. 2015) (citing *Partin v. Commonwealth*, 337 S.W.3d 639, 640 (Ky. App. 2010)). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). "The burden of proof in a CR 60.02 proceeding falls squarely on the movant to affirmatively allege facts which, if true, justify vacating the judgment and further allege special circumstances that justify CR 60.02 relief." *Foley v. Commonwealth*, 425 S.W.3d 880, 885 (Ky. 2014) (internal quotation marks and citations omitted). "[W]e will affirm the lower court's decision unless there is a showing of some 'flagrant miscarriage of justice.'" *Id.* at 886 (quoting *Gross v. Commonwealth*, 648 S.W.2d 853, 858 (Ky. 1983)).

Finally, "CR 60.03 'is intended as an equitable form of relief when no other avenue exists.'" *Jackson v. Commonwealth*, 640 S.W.3d 99, 103 (Ky. App. 2022) (quoting *Meece v. Commonwealth*, 529 S.W.3d 281, 295 (Ky. 2017)). Like

-10-

CR 60.02 motions, "[a] trial court's denial of a CR 60.03 motion is also reviewed for abuse of discretion." *Id*. at 101 (citations omitted).

### III. ANALYSIS

Wise presents a single claim relating to ineffective assistance of his trial counsel, as outlined in his initial RCr 11.42 motion. Wise argues that he suffered prejudice when his trial counsel misadvised him regarding the range of penalties he could face for first-degree robbery. He contends that, because the prosecutor and trial counsel both agreed to the mistaken belief that first-degree robbery had twenty-percent parole eligibility, this is *prima facie* evidence that he was not advised correctly prior to trial regarding the Commonwealth's plea offer. However, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

Here, we agree with the trial court that Wise suffered no prejudice as a result of the purported error. The Commonwealth's plea offer was for a term of ten years' incarceration if Wise pleaded guilty to first-degree robbery, and this is the sentence Wise received from the trial court after his conviction – a lesser sentence than the one recommended by the jury, and one that resulted from an error committed by the Commonwealth, not trial counsel. Wise argues that, as a remedy, he should receive the "original" plea offer, which would be a sentence of

-11-

ten years for first-degree robbery, at the contemplated twenty-percent parole eligibility. However, *any* first-degree robbery conviction *must* conform to the eighty-five percent parole eligibility spelled out in KRS 439.3401 because "sentences falling outside the permissible sentencing range cannot stand uncorrected." *McClanahan v. Commonwealth*, 308 S.W.3d 694, 700 (Ky. 2010). This maxim applies equally to sentences exceeding statutory ranges as well as those which are lower than the statutory minimum. *Id.* (citing *Neace v. Commonwealth*, 978 S.W.2d 319, 322 (Ky. 1998)). In short, Wise received the minimum sentence possible for any first-degree robbery conviction. The trial court correctly determined Wise suffered no prejudice from trial counsel's purportedly erroneous advice.

Wise's remaining issues on appeal stem from his second postconviction motion for relief, which argues for relief under RCr 11.42, CR 60.02, and CR 60.03. The trial court found the second RCr 11.42 motion to be successive and yet elected to entertain the substance of the claims proffered in that motion. We agree with the trial court that the second RCr 11.42 motion is successive, and we may affirm for that reason alone. "[I]t is well-settled that an appellate court may affirm a lower court for any reason supported by the record." *McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009).

"Kentucky courts have repeatedly ruled that once a criminal defendant moves to vacate his sentence under RCr 11.42, he is not entitled to another bite at the apple." *Owens v. Commonwealth*, 512 S.W.3d 1, 14 (Ky. App. 2017) (citing *Gross*, 648 S.W.2d at 857). Wise does not deny the successiveness of the motion, but he contends he is entitled to that second bite at the apple because his first RCr 11.42 motion was filed by an attorney who had a conflict of interest in doing so. However, at its root, this argument is grounded in ineffective assistance of *postconviction counsel*, not IAAC. Wise is attempting to use his appellate attorney's perceived mistake in filing the first RCr 11.42 motion as an avenue through which to file a successive RCr 11.42 motion. Aside from the problem of successiveness, this is procedurally improper for another reason; Kentucky law does not currently recognize claims of ineffective assistance of postconviction counsel:

> We directly addressed the issue of ineffective assistance of RCr 11.42 counsel in *Hollon*, wherein we stated "[f]or further clarity, we additionally emphasize that [ineffective assistance of appellate counsel] claims are limited to counsel's performance on direct appeal; there is no counterpart for counsel's performance on RCr 11.42 motions or other requests for postconviction relief."

*Sanders v. Commonwealth*, 339 S.W.3d 427, 435 (Ky. 2011) (quoting *Hollon*, 334 S.W.3d at 437). For these reasons, we will not consider the issues presented in Wise's second postconviction motion pursuant to RCr 11.42.

Next, we must consider whether the trial court abused its discretion when it determined issues in Wise's second postconviction motion did not warrant relief under CR 60.02. The trial court correctly observed that "CR 60.02 is not an additional avenue to relitigate issues previously before the Court, or present issues that reasonably could have been presented by direct appeal or RCr 11.42 proceedings." (R. at 38-39) (citing *McQueen v. Commonwealth*, 948 S.W.2d 415, 416 (Ky. 1997) (citing *Gross*, 648 S.W.2d at 855-56)). The trial court considered the issues in the second motion and determined that Wise could have presented these issues in his first appeal and in his first RCr 11.42 motion. Going further, the trial court evaluated Wise's claims and determined they did not entitle him to relief under CR 60.02 because they did not "rise[] to the level of manifest injustice to call into question the outcome of the proceeding." (R. at 39.)

The trial court did not abuse its discretion. First, the only issues present in the motion are for IAAC. They are putative trial errors which Wise belatedly asserts should have been briefed by appellate counsel. As such, the trial court correctly recognized that Wise should have presented these issues in previous proceedings and not in a CR 60.02 motion. "CR 60.02 is not a separate avenue of appeal to be pursued in addition to other remedies, but is available only to raise issues which cannot be raised in other proceedings." *McQueen*, 948 S.W.2d at 416.

Finally, the trial court determined Wise was not entitled to relief under CR 60.03 for the same reasons he was not entitled to relief under CR 60.02. We agree. As stated previously, "CR 60.03 'is intended as an equitable form of relief when no other avenue exists.'" *Jackson*, 640 S.W.3d at 103 (quoting *Meece*, 529 S.W.3d at 295). As outlined by the trial court *supra*, Wise's issues could have been presented through direct appeal or in his first RCr 11.42 motion. Because Wise could have presented these issues through other avenues, CR 60.03 relief is inappropriate here. Additionally, pursuant to the language of the Rule, CR 60.03 relief shall not be granted "if the ground of relief sought has been denied in a proceeding by motion under Rule 60.02[.]" CR 60.03. The trial court correctly ascertained that a denial of relief under CR 60.02 makes relief under CR 60.03 unavailable; *see Foley*, 425 S.W.3d at 888 (holding that when relief is denied under CR 60.02, "it follows that Appellant is not entitled to relief under CR 60.03").

## IV. CONCLUSION

For the foregoing reasons, we affirm the Franklin Circuit Court's orders denying relief under RCr 11.42, CR 60.02, and CR 60.03.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jeffrey A. Lawson
Covington, Kentucky

F. Todd Lewis
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Robert G. Johnson
Special Assistant Attorney General
Versailles, Kentucky