RENDERED: MARCH 21, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0044-MR

CAITLYN M. CONWAY						APPELLANT


								APPEAL FROM FAYETTE CIRCUIT COURT
v.							HONORABLE LUCY A. VANMETER, JUDGE
								ACTION NO. 15-CR-00978-001


COMMONWEALTH OF KENTUCKY					APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, A. JONES, AND McNEILL, JUDGES.

JONES, A., JUDGE: Caitlyn M. Conway appeals a December 19, 2023 order of

the Fayette Circuit Court denying what she styled below as her post-conviction

"motion to amend final judgment, pursuant to [CR[1]] 60.02, [CR] 60.03, and the

---

[1] Kentucky Rule of Civil Procedure.

6th, 8th and 14th Amendments to the United States Constitution and § 17 and §

115 of the Kentucky Constitution." Upon review, we affirm.

## I. BACKGROUNND

The circuit court's order accurately summarized the background of

this case:

> Conway and her co-defendants, Demarcus R. Harris and Charles B. Patton III, were indicted for Count 1: Murder, Counts 2-4: Robbery First Degree, and Count 5: Burglary First Degree. Harris was indicted on the additional Count 6: Persistent Felony Offender Second Degree. The charges arise out of a series of incidents in which Conway lured victims to a location where they were assaulted and robbed by Harris and Patton. On the last of these occasions, a person was shot and killed.
>
> According to the Presentence Investigative Report and other information in the file, the first incident occurred on or about September 15, 2014 wherein Conway approached and propositioned the victim, D.D., for sex as he was leaving the Spearmint Rhino Gentleman's Club. Conway lured D.D. to an area where Harris and Patton appeared with weapons. D.D. was "struck [] in the face with the butt of [a] pistol, causing him to lose consciousness." *See* PSI. Upon regaining consciousness, defendants demanded D.D.'s wallet and phone. The second incident occurred on or about September 28, 2014 wherein Conway met the victim, G.R., at Solid Platinum Gentleman's Club and made arrangements to go to G.R.'s residence for a sexual encounter. While at G.R.'s residence, Conway called Harris and Patton who arrived with a silver revolver and large knife, bound the victim with an extension cord and leather belt and took items from the residence. The third incident occurred on or about October 4, 2014 wherein

-2-

Conway advised Harris and Patton that an acquaintance of hers, C.M., would not be home after which the residence was burglarized and multiple items were taken including a 9mm handgun. The fourth incident occurred on or about October 5, 2014 wherein Conway was at the residence of the victim, D.B., for the purpose of a sexual encounter for money. Harris and Patton arrived with firearms, physically assaulted and killed D.B., physically assaulted a second victim, and left with an unknown amount of cash, leaving behind the 9mm that had been stolen from C.M.'s residence the prior evening.

The Commonwealth filed a Notice of Aggravating Circumstance on October 16, 2015[,] indicating, if convicted of the Capital offense, it would seek an instruction as to Conway on all penalties in accordance with KRS[2] 532.030(1) and (3), including death.

The file indicates "[a]ll Defendants gave statements . . . Each Defendant sought to minimize his/her involvement in each incident but both Patton and Harris agreed that in the robbery/homicide Conway lured the victim into a compromised position, contacted Patton and Haris, and that an altercation ensued resulting in the gunshot wound to D.B." *See* Commonwealth's Response to Defendant's Motion to Sever Counts, filed 6/2/16.

Patton pled guilty on April 19, 2017 to amended charges of Count 1: Am: Criminal Facilitation to wit: Murder, Count 2: Robbery First Degree, Counts 2-3: Am: Robbery, Second Degree, and Count 5: Am: Burglary, Third Degree pursuant to the Commonwealth's recommendation of Count 1: five (5) years, Count 2: ten (10) years, Count 3: five (5) years, Count 4: five (5) years and Count 5: one (1) year. Patton's plea was conditioned upon his truthful testimony at the trial of his co-defendants. Notably, Conway was present for Patton's plea and, at the time, was actively contemplating

---

[2] Kentucky Revised Statute.

-3-

whether to proceed to trial or accept the Commonwealth's offer.

Two days after Patton's guilty plea and accompanying testimony, Conway pled guilty to the amended charges of Count 1: Am: Criminal Facilitation to wit: Murder, Count 2: Robbery First Degree, Counts 2-3: Am: Robbery, Second Degree, and Count 5: Am: Burglary, Third Degree pursuant to the Commonwealth's recommendation of Count 1: five (5) years, Count 2: ten (10) years, Count 3: five (5) years, Count 4: five (5) years and Count 5: one (1) year.

The Court deferred sentencing for Patton and Conway because Harris maintained his not guilty plea and was scheduled to proceed to trial. Ultimately, on March 1, 2019, Harris pled guilty. Thereafter, Conway was sentenced to Count 1: five (5) years, Count 2: ten (10) years, Count 3: five (5) years, Count 4: five (5) years and Count 5: one (1) year with all counts to run consecutively for a total of twenty-six (26) years.

Order at 1-3.

Conway did not file a direct appeal or a motion pursuant to RCr[3] 11.42 for ineffective assistance of counsel. Rather, on or about May 25, 2023, she filed a post-conviction motion under the auspices of CR 60.02 and CR 60.03, arguing her sentence should be amended because: (1) her voluntary intoxication should have been a mitigating factor in the penalty phase of the case; (2) "her trial attorney never submitted a defense of Extreme Emotional Distress;" and (3) she was "coerced into a plea by both prosecutor and defense attorneys," was

_____

[3] Kentucky Rule of Criminal Procedure.

-4-

"threatened by the prosecutor that her codefendants were going to testify against her regarding this crime," and she later learned there were "no statements that they [the codefendants] were going to give and the prosecutor had fabricated the story." Motion at ¶¶11-14. The circuit court denied Conway's motion without granting her an evidentiary hearing. This appeal followed.

## II. ANALYSIS

On appeal, Conway does not address any aspect of the circuit court's rationale for denying her postconviction motion. Instead, she (1) repeats the arguments she made in her motion and (2) raises several new arguments that she never posed below. Regarding the arguments Conway raised in her motion, we find no error in the circuit court's thorough analysis, which we adopt as follows:

> A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment that can be modified in only certain enumerated circumstances. "The structure provided in Kentucky for attacking the final judgment of a trial court in a criminal case is not haphazard and overlapping, but is organized and complete. That structure is set out in the rules related to direct appeals, in RCr 11.42, and *thereafter* in CR 60.02. CR 60.02 is not intended merely as an additional opportunity to raise *Boykin*[4] defenses. It is for relief that is not available by direct appeal and not available under RCr 11.42. The movant must demonstrate why he is entitled to this special, extraordinary relief. Before the movant is entitled to an evidentiary hearing, he must affirmatively allege facts which, if true, justify vacating the judgment and further allege special circumstances

---

[4] *Boykin v. Alabama*, 395 U.S. 238 (1969).

that justify CR 60.02 relief." *Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983) (emphasis in original).

Conway seeks relief pursuant to CR 60.02(a), (e) and (f) which provide:

> On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: (a) mistake, inadvertence, surprise or excusable neglect; . . . (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief. The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this rule does not affect the finality of a judgment or suspend its operation.

CR 60.02. Conway's Motion pursuant to CR 60.02(a) is not timely and, in any event, she has not alleged any incident of mistake, inadvertence, surprise or excusable neglect. Similarly, Conway has not made any legal or factual showing with regard to subsection (e). Accordingly, her motion must be based on subsection (f) which provides relief from judgment due to "any other reason of an extraordinary nature justifying relief."[5] CR 60.02(f).

---

[5] Conway also seeks relief pursuant to CR 60.03 which authorizes an "independent action to relieve a person from a judgment . . . on appropriate equitable grounds." CR 60.03. Conway has not filed an "independent action" and, in any event, the rule does not permit an independent

-6-

> Generally, CR 60.02(f) stands in the place of the ancient writ of coram nobis. To have a judgment set aside in a coram nobis proceeding, a petitioner had to convince the court that "the real facts as later presented on application for the writ, rendered the original trial tantamount to none at all, and [enforcement of] the judgment as rendered would be an absolute denial of justice and analogous to the taking of life or property without due process of law."

*Brown v. Commonwealth*, 932 S.W.2d 359, 361-62 (Ky. 1996) (internal citations omitted). "CR 60.02 allows appeals based upon claims of error 'that were unknown and could not have been known to the moving party by exercise of reasonable diligence and in time to have been otherwise presented to the court.' The rule provides an extraordinary form of relief, and 'is not intended as merely an additional opportunity to raise claims which could and should have been raised in prior proceedings[.]'["] *Meece v. Commonwealth*, 529 S.W.3d 281, 285 (Ky. 2017) (internal citations omitted).

**1. Allegation Conway Was Threatened With the False Statement That Her Co-Defendants Would Testify Against Her**

Conway alleges she was "coerced into a plea by both prosecutor and defense attorneys," was "threatened by prosecutor that her codefendants were going to testify against her regarding this crime," and she later learned there were "no statements that they [the co-defendants] were going to give and the prosecutor had fabricated the story." *See* Motion at ¶¶ 11-13. Conway's allegations are wholly unsupported by the record and are, in fact,

---

action to relieve a person from judgment on equitable grounds "if the ground of relief sought has been denied in a proceeding by motion under Rule 60.02."

false. Conway was present when Patton entered his plea of guilty and provided a lengthy and detailed recitation of the crimes and Conway's involvement in them. She heard the very statements that would have been used against her in the event she chose to proceed to trial.

Specifically, Conway was present when Patton's attorney set out the facts supporting the guilty plea including that on or about October 5, 2016, Patton, Harris and Conway were working together to "take money from people." *See* VR 4/19/17 at 9:49 a.m. – 9:57 a.m. Patton's counsel represented to the Court that Conway was with the victim when she contacted Harris after which Harris and Patton arrived at the residence, both armed, and with the intent to commit a robbery. *Id.* Patton's counsel represented that D.B. was shot and killed during the incident. *Id.* Patton testified that his counsel's statement of events was truthful. *Id.* Patton further testified he and Harris were armed and that Conway opened the door to allow them entry. *Id.* Patton testified there was an altercation between Harris and D.B. as soon as they made entry into the home. *Id.* A second victim ran at Patton and "tackled" him. *Id.* During this time, Harris shot and killed D.B. *Id.* Patton testified Conway was in the residence during all of the foregoing events. *Id.* He fled the residence and was joined by Conway and Harris in a vehicle for the purpose of fleeing the scene. *Id.* Patton testified he and Harris were both intoxicated but he was not sure whether Conway was intoxicated at the time of incident. *Id.* He testified Harris was the "mastermind" of the events. *Id.*

As to events on September 28, 2014, Patton's counsel represented this crime was a similar "modus operandi" wherein Conway was at a residence with the victim when she made a phone call to Harris after which Harris and Patton arrived at the residence and tied the victim to a chair. *See* VR 4/19/17 9:57 a.m. – 10:00 a.m. Patton affirmed the representations of his counsel with the exception of correcting the record by stating that the

victim was tied to a bed with an extension cord found at the residence. *Id.* Patton testified Conway performed "sexual favors" to entice the victim and gain entry into his residence for the purpose of allowing Harris and Patton entry to commit a robbery. *Id.* Patton testified Harris was armed with a gun and both participated in taking property from the residence including a television and loose change. *Id.*

As to the events on or about September 15, 2014, Patton's attorney recounted this was a "similar M.O." except that it occurred near the Spearmint Rhino Gentleman's Club near a garbage container wherein Conway lured the victim to the area where he was robbed. *See* VR 4/19/17 at 10:01 a.m. – 10:02 a.m. Counsel advised the Court that surveillance video shows two people walking to the area where the robbery occurred and other video shows Harris and Patton "clearly" at Spearmint Rhino. *Id.* Patton confirmed the information provided by his counsel, i.e., that Conway "got the victim in a compromised position" whereupon he and Harris committed the robbery. *Id.*

Finally, as to events on October 4, 2014, Patton's counsel testified that Conway knew the victim would be out of town. *See* VR 4/19/17 at 10:02 a.m. – 10:05 [a].m. Patton testified that Harris had the idea to break into the residence. *Id.* Harris broke a window, Patton climbed into the residence and opened the door for Harris and Conway, whereupon all three took property including a gun and a television. *Id.* Patton testified the gun was later used in the murder of D.B. and the television was sold for money to buy drugs. *Id.*

Two days after she heard Patton's testimony against her, Conway entered her own guilty plea. She detailed her involvement in the crimes. She testified that she was pleading guilty of her own free will without any pressure or threats from other people to get her to do so. *See* VR 4/21/17 at 10:07 a.m. Although her testimony

-9-

differs in some respects from Patton's testimony, it is simply false to allege that "there were no statements" that would have been admitted against her had she chosen to proceed to trial. Those statements had been made in Court, in her presence, two days prior to her own guilty plea. Moreover, in her plea, Conway admitted that she was aware that both Harris and Conway gave statements to the police. *See* VR 4/21/17 at 10:33 a.m.

## 2. Failure to Submit Defense of EED

Conway alleges her attorney "never submitted a defense of Extreme Emotional Distress" to possibly receive "a lesser sentence." *See* Motion at ¶8. The thrust of this argument is that Conway's counsel provided ineffective assistance. Failure to adequately investigate and raise an affirmative defense is a question of ineffective assistance of counsel. *See Commonwealth v. Rank*, 494 S.W.3d 476 (Ky. 2016). Similarly, failure to inform a defendant of an affirmative defense while the defendant is considering a plea offer constitutes ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Both of these issues could have been, and should have been, raised in an RCr 11.42 motion and it is improper to resolve them via a CR 60.02. In *Gross*, the Kentucky Supreme Court held:

> ***[W]e hold that a defendant is required to avail himself of RCr 11.42*** while in custody under sentence or on probation, parole or conditional discharge, as to any ground of which he is aware, or should be aware, during the period when this remedy is available to him. ***Final disposition of that motion, or waiver of the opportunity to make it, shall conclude all issues that reasonably could have been presented in that proceeding. The language of RCr 11.42 forecloses the defendant from raising any questions under CR 60.02 which are***

-10-

> ***"issues that could reasonably have been presented" by RCr 11.42 proceedings***.

*Gross*, 648 S.W.2d at 856 (emphasis added).

Alternatively, Conway has failed to put forth evidence that would have justified the defense of Extreme Emotional Disturbance. As the Kentucky Supreme Court noted:

> KRS 507.020 [the statutory provision for Murder] refers to an "extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." We further defined the concept of EED in *McClellan v. Commonwealth*:

> > ***Extreme emotional disturbance is a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment***, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes. It is not a mental disease in itself, and an enraged, inflamed, or disturbed emotional state does not constitute an extreme emotional disturbance unless there is a reasonable explanation or excuse therefore, the reasonableness of which is to

be determined from the viewpoint of a person in the defendant's situation under circumstances as the defendant believed them to be.

And, . . . "the mere presence of mental illness, standing alone, does not constitute EED[."]

*Holland v. Commonwealth*, 114 S.W.3d 792, 806 (Ky. 2003) (emphasis added) [(footnotes omitted)]. To succeed on a CR 60.02(f) motion, the "real facts" presented in the application "are required to be based upon *reasonable* deductions." *Foley v. Commonwealth*, 425 S.W.3d 880, 887 (Ky. 2014). "Indeed, mere speculation or conjecture has never been a sufficient basis to support an evidentiary inference." *Id.* Conway has failed to present evidence that would have supported such a defense as to even one of the incidents. Moreover, the nature of an EED defense being a *temporary* and *enraged* state of mind, does not lend itself to a series of events which occurred over a period of weeks.

Finally, even if Conway could present this claim pursuant to RCr 11.42, it fails. When a defendant asserts she received ineffective assistance of counsel she "must show that counsel's performance was deficient," and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, [687] (1984). In the context of a guilty plea, the standard for ineffective assistance of counsel is the same, but the second prong is evaluated as "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This prong requires the defendant to show that there is a "reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Id.* Conway has failed to establish that the alleged error affected the plea or that,

but for the ineffective performance, she would have insisted on going to trial. A jury finding of extreme emotional disturbance would have reduced the Murder charge to Manslaughter 1st Degree, a Class B felony (KRS 507.030). Defendant was facing a Capital Murder charge and the death penalty. Conway's attorney negotiated a plea to the lesser offense of Criminal Facilitation to Murder, a Class D felony (KRS 506.080), pursuant to a recommendation of five (5) years. This was a substantial amendment from the Capital charge for which Conway was facing the death penalty. Counsel also presented a considerable amount of information in mitigation of the punishment including a Sentencing Memorandum, a sentencing video in which Conway and others talk about her life, and multiple letters advocating on her behalf. Ultimately, this information could not overcome the gravity of the offenses committed by Conway or the fatal consequences of her actions. Conway has failed to establish she would have preferred to reject the offer of Criminal Facilitation to Murder in order to proceed to trial in a Capital case with the hope that the jury might find she acted under an extreme emotional disturbance. Her negotiated plea served her better than a jury finding of extreme emotional disturbance.

### 3. Voluntary Intoxication

Conway states she was "extremely intoxicated at the time of the offenses, partly voluntary and party involuntary" and that, while she "has not denied her participation in the commission of the charges she was indicted on . . . [her intoxication] could have been utilized during the penalty phase of the trial as a mitigating factor." *See* Motion at 2. As an initial matter, there was no penalty phase of the trial. Conway pled guilty which eliminated the need for a trial.

It should also be noted that Conway's motion contains contradictory statements. She "claims actual

-13-

innocence" (Motion at ¶11) *and* that she "has not denied her participation in the commission of the charges she was indicted on" (Motion at ¶6) and "is extremely remorseful for the life she has taken" (Motion at ¶15). All of these things cannot be true. Conway's detailed guilty plea colloquy in which she admitted that the September 28, 2014, plan was to get the victim in a "compromising position" so that Harris and Patton could commit the robbery belies her belated, and contradictory, assertions of "actual innocence." *See* VR 4/21/17 at 10:07 a.m. – 10:17 a.m. Conway also admitted that on the other occasions, she went out with Harris and Patton with the mindset that "if it [a robbery] happens it happen." *Id.* Because of their established pattern, Conway testified she "assumed" Harris and Patton were going to rob D.B. when she arranged for their entry into his residence. *Id.* Moreover, in her Sentencing Memorandum filed with the Court on March 6, 2019, she admitted that Harris "orchestrated a scheme in which he would use Caitlyn as bait in robberies. Caitlyn would hang out at various strip clubs, offer men sex for money, and then [Harris] and [Patton] robbed the men. In exchange for this, Caitlyn received a place to stay, a small amount of cash, cigarettes, or, in one case, nothing." *See* Sentencing Memorandum, filed 3/6/19. Conway has presented no evidentiary basis for her contradictory claim of "actual innocence" and the Court concludes it is a belated fabrication, much like her allegations of prosecutorial misconduct.

Conway correctly notes that "voluntary intoxication may reduce an intentional murder to a lesser-included offense. Intoxication is also a mitigating factor in the penalty phase of a capital offense." *Mills v. Commonwealth*, 170 S.W.3d 310, 329 (Ky. 2005), *overruled on other grounds by Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky. 2009). The applicable statute provides:

-14-

Intoxication is a defense to a criminal charges only if such condition either:

(1) Negatives the existence of an element of the offense; or

(2) Is not voluntarily produced and deprives the defendant of substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

KRS 501.080. "A voluntary intoxication instruction is justified . . . when there is evidence that the defendant was so drunk that he did not know what he was doing, or when the intoxication [negates] the existence of an element of the offense." *Nichols v. Commonwealth*, 142 S.W.3d 683, 688 (Ky. 2004).

To the extent Conway is arguing her counsel was ineffective in failing to raise intoxication as a defense, this issue could have been, and should have been, raised in an RCr 11.42 motion and it is improper to resolve via a CR 60.02 motion. Alternatively, Conway has not cited any evidence that she was actually intoxicated to such an extent that it negated an element of any of the charged offenses. Conway's testimony at her guilty plea establishes that she knew what she was doing by luring the men into compromising positions and arranging for Harris and Patton to commit the robberies. Finally, as set out above, Conway's counsel did negotiate a substantial amendment of the charges which served her just as well, or better, than a defense of voluntary intoxication.

. . .

Finally, under CR 60.02, "[b]efore the movant is entitled to an evidentiary hearing, [s]he must affirmatively allege facts which, if true, justify vacating the judgment and further allege special circumstances

-15-

that justify CR 60.02 relief." *Gross*, 648 S.W.2d at 856. Conway has failed to allege facts which, if true, would justify vacating the judgment.

Order at 4-13.

As noted, in addition to repeating the arguments she made in her post-conviction motion (set forth and addressed above), Conway also raises several new arguments that she never posed below. She contends her counsel was ineffective because: (1) he failed to consult with a "mitigation specialist;" (2) he failed to request a "missing evidence instruction" or impeach the Commonwealth's evidence regarding "the gun that was the weapon used in the crime;" (3) he failed to "thoroughly" investigate whether she was "unaware of her codefendants intentions at the time of the crime" or whether "the evidence presented was 'fabricated' for the jury;" and that (4) "the cumulative effect of each of the aforementioned errors" deprived her of effective assistance of counsel.

We will not address these new arguments. First, Conway did not raise them in her CR 60.02 motion before the circuit court, and they are accordingly unpreserved. "When an issue has not been addressed in the order on appeal, there is nothing for us to review. Our jurisprudence will not permit an appellant to feed one kettle of fish to the trial judge and another to the appellate court." *Owens v. Commonwealth*, 512 S.W.3d 1, 15 (Ky. App. 2017) (citations omitted). Second, like roughly all of Conway's other arguments that the circuit court had the

opportunity to address, these arguments allege ineffective assistance of counsel. They could and should have been raised in an RCr 11.42 motion. Thus, even if Conway had raised them in her CR 60.02 motion, it would have been improper for the circuit court to have addressed them in any event. *Gross*, 648 S.W.2d at 856.

### III. CONCLUSION

Considering the foregoing, we AFFIRM.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Caitlyn M. Conway, *pro se*<br>Pewee Valley, Kentucky | Russell Coleman<br>Attorney General of Kentucky |
| | Ken W. Riggs<br>Assistant Attorney General<br>Frankfort, Kentucky |